COUNTY OF LANCASTER v. CHERAW & CHESTER RAILROAD COMPANY.

1. A statute authorized a county to subscribe to a railroad projected across the county and issue its 6 per cent. bonds in payment for such subscription, which bonds were to be delivered to the railroad company when the company delivered its bond to the county conditioned to pay the interest on these county bonds until the railroad was completed in the county. On such completion the board of county commissioners were to receive from the company preferred stock bearing 7 per cent. interest. The company executed a bond to pay $30,000, the interest on the county bonds for five years, and received the county bonds, and more than five years afterwards, the railroad having been completed to the county seat and its further construction across the county practically abandoned, the chairman of the board of commissioners of the county received a certificate of preferred stock from the company, and then upon the vote of this stock by the county and of other stock, the railroad was leased to another company. In action by the county against the lessee for the payment of interest on the county bonds to date, *held*, that they were liable only for $30,000, interest accrued prior to the issue of the preferred stock.

2. The county cannot now be heard to say that the railroad was not completed in the county.

3. The certificate of preferred stock was dated January 1, 1881, and bore interest from that date, but was not delivered until the fall of 1882. *Held*, that the stock should be regarded as the accepted substitute as of its date for the company's bond.

4. A corporation which acts through its agents and then recognizes the acts of such agents and accepts the benefits thereof, cannot afterwards repudiate such acts as *ultra vires.* So this county cannot now claim that the acceptance of the preferred stock by its commissioners before the completion of the road across the entire county, was unauthorized.

5. But under the power vested in the board of county commissioners by the constitution over the internal improvement and local concerns of the county, the act of this board in accepting the preferred stock was not *ultra vires.*

6. A new trial *nisi* granted by this court.

Before ALDRICH, J., Lancaster, October, 1886.

The opinion fully states the case.

*Messrs. R. E. & R. B. Allison,* for appellant, on the question of *ultra vires* and estoppel, cited the following authorities : 2 *Pars. Cont.,* 790 ; *Big. Estop.,* 466 ; 95 *Ill.,* 245 ; 83 *Id.,* 141 ; 96 *U. S.,* 312, 341, 267 ; 22 *Cal.,* 620 : 29 *N. J. Eq.,* 543 ; 63 *N. Y.,* 62.

*Mr. Ira B. Jones,* contra, cited the statute quoted in the opinion, and the following additional authorities : 93 *U. S.,* 326 ; 31 *Penn. St.,* 334 ; 109 *Mass.,* 53 ; 18 *Wall.,* 271 ; 71 *Ill.,* 380 ; 84 *Ill.,* 435 ; 12 *Abb.* (N. S.), 289 ; 49 *N. Y.,* 111 ; 28 *Me.,* 525 ; 35 *Vt.,* 205 ; 52 *Penn. St.,* 498 ; 38 *Ill.,* 145 ; 31 *Ind.,* 1 ; *Big. Estop.,* 480 ; 13 *S. C.,* 370 ; *Boone Corp.,* § 104.

February 24, 1888.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.   By an act approved February 27, 1873 (15 *Stat.,* 442), the defendant company was chartered and authorized "to construct a railroad from Cheraw, in Chesterfield County, to Chesterville, in Chester County, by such route as shall be found most suitable and advantageous, the precise line and location to be determined upon by the incorporators after the necessary surveys shall have been made."   What was the precise line or location thus determined upon, does not appear in the "Case," though the road seems to have been completed from Chester to the town of Lancaster about January 1, 1881, from

which it is assumed that the line would have to run clear across the County of Lancaster in order to reach the other terminal point mentioned in the charter.

By an act approved March 14, 1874 (15 *Stat.*, 668), the several counties through which the defendant company was authorized to construct said railroad were "empowered to issue bonds in subscription for preferred stock of said company, subject to the conditions and provisions hereinafter mentioned," and the second section provided that these bonds should bear interest at the rate of six per cent. per annum, and be payable thirty years after their date. The fourth section of this act reads as follows: "When the said company shall actually commence the construction of a railroad within the county, and shall deposit with the county treasurer of the county a bond of the said company, executed in such form as shall be approved by the judge of the Circuit, in a sum sufficient to secure the payment of the interest on the said bonds until the said railroad shall be completed in the county, the board of county commissioners shall deliver the said bonds to the said company and publish the fact of such delivery in the official paper of the county. On the completion of the said railroad in the county, the board of county commissioners shall receive from said company an amount of preferred stock of the said company equal to the amount of the said bonds, which preferred stock shall bear interest at the rate of seven per cent. per annum."

The scheme of the act manifestly was, that while the road was in process of construction, the railroad company should pay the interest on the county bonds, which were to be issued as soon as the work was commenced in the county, but that when the road was completed and the county received its preferred stock, the interest on such stock would furnish the means of paying the interest on the bonds and leave a surplus of one per cent. to be accumulated for the redemption of the principal of the bonds when the same became payable. In pursuance of this scheme, the railroad company having actually commenced the construction of said road in the county of Lancaster on March 10, 1875, duly executed its bond to the said county in the sum of thirty thousand dollars, "being the aggregate amount of the interest

for five years, at six per centum per annum upon one hundred thousand dollars of bonds about to be issued" by the said county, the condition of which bond is : "that if the said Cheraw & Chester Railroad Company shall pay the interest which may accrue upon the said bonds as the same may become due, until their said railroad shall be completed within the said County of Lancaster, or save said county harmless from the payment of such, then the above obligation to be void and of none effect, otherwise to remain in full force and virtue."

On May 5, 1875, this bond was duly delivered to the proper officer of the County of Lancaster, and the county commissioners of said county thereupon issued and delivered to the defendant company one hundred thousand dollars of county bonds, payable thirty years after date, and bearing interest at the rate of six per centum per annum, payable on the first day of February in each year, beginning with the first of February, 1876. After the railroad was completed to the town of Lancaster the defendant company issued to the plaintiff a certificate for two thousand shares, of the par value of fifty dollars each, of the preferred stock of said company, which certificate, though bearing date January 1, 1881, does not seem to have been actually delivered to the proper officers of said county until some time in July or August, 1882.

Some time in the year 1882 a meeting of the stockholders of the defendant company was held, at which it was resolved that the said railroad, together with all the property, rights, and franchises of said company, should be leased to the Charlotte, Columbia & Augusta Railroad Company for the term of ninety-nine years. At this meeting the plaintiff was duly represented by the chairman of its board of county commissioners, and being thereto duly authorized, voted the said two thousand shares of preferred stock previously issued to said county in favor of said lease, which lease met the approval of all the holders of the preferred stock of said company, and also of nearly all of the holders of common stock represented at said meeting.

In pursuance of this resolution the lease was duly executed by the defendant company to the Charlotte, Columbia & Augusta Railroad Company on September 29, 1882, and the road, with all of its appurtenances, was turned over to said lessee. A

copy of this lease, though not printed in the "Case," is filed herewith, which, by agreement, may be referred to as part of the record. · One of the provisions of this lease is that the lessee "will pay directly to the stockholders of said The Cheraw & Chester Railroad Company, or to their treasurer or agent, annually a sum equal to an annual dividend of one and one-half per centum upon the par value of the capital stock of said Cheraw & Chester Railroad Company, meaning thereby the preferred stock held by the counties of Chester and Lancaster (amounting to $175,000), and the common stock held by all persons (amounting to about $90,000), such payment to be made annually, computing from the date of the transfer of the railroad property and franchises hereinbefore set forth and described." The lease also contains a provision authorizing, *but not requiring*, the lessee, "whenever they may deem it expedient," to extend said railroad from and beyond the town of Lancaster towards the town of Cheraw, but it does not appear that such extension has ever yet been made or deemed expedient.

It also appears that the County of Lancaster has paid the interest on its bonds for the eleven years next preceding the commencement of this action, amounting in the aggregate to the sum of sixty-six thousand dollars, and the object of the action is to recover the amount thus paid, upon the ground that said railroad has never yet been completed in the County of Lancaster. In the complaint the plaintiff's claim seems to be based upon two causes of action, 1st, the bond of the defendant company for thirty thousand dollars hereinbefore mentioned, and, 2d, the alleged liability of the defendant company under the terms of the act of 1874, independent of said bond, to pay the interest on the county bonds until the entire road shall be completed. The defendant concedes its liability for thirty thousand dollars under the said bond, being the interest which accrued on said county bonds while the road was in process of construction, but denies its liability for the remainder of the claim upon the ground that the plaintiff, by receiving and retaining the preferred stock, which, under the terms of the act, could only be issued after the completion of the road, is estopped from denying that the road has been completed.

At the close of the testimony developing the foregoing facts, the defendant requested the Circuit Judge to charge the jury that the county, by receiving the preferred stock, was estopped, under the terms of the act of 1874, from denying that the road was completed in the County of Lancaster, and that, therefore, the county could not recover any interest which had accrued on its bonds after the preferred stock was issued, inasmuch as the act did not contemplate that the railroad company should be liable for any interest which accrued on the county bonds after the preferred stock was issued. The Circuit Judge declined to charge as requested, and, on the contrary, instructed the jury that if the railroad had not been completed in the County of Lancaster, as contemplated in the act, the county was not estopped from recovering the interest which accrued on its bonds after the issuance of the preferred stock and the receipt thereof by the county, and he, therefore, directed the jury to sign a verdict for the whole amount of sixty-six thousand dollars, which was accordingly done without the jury leaving their box.

From the judgment entered upon this verdict, defendant appeals upon the several grounds stated in the record, which need not be set out here, as they make, substantially, the same questions as those indicated above, though there is an additional ground imputing error to the Circuit Judge in taking from the jury all questions of fact and instructing them what amount to find. Inasmuch as the defendant, very properly, concedes its liability under its bond for the sum of thirty thousand dollars, the only question for us to consider is, whether there was any error in holding the defendant liable for the balance of the amount claimed, being the interest which accrued on the county bonds after the preferred stock was issued.

It seems to us clear that the act of 1874 never contemplated that the company should pay the interest on the county bonds after the preferred stock was issued. On the contrary, as we have said above, the scheme of the act manifestly was that the railroad company should pay the interest on the county bonds while the road was in process of construction, but no longer ; for then the idea was that the dividends or interest on the preferred stock, which could only be issued after the road was completed

in the county, should be used for that purpose. It certainly never was intended that the company should pay the interest on the county bonds, and at the same time pay the interest on the preferred stock. Suppose that after the road had been completed to the town of Lancaster the stockholders had determined to abandon its further extension towards Cheraw, and thereupon preferred stock had been issued to the plaintiff to the amount of its bonds, upon which the company was regularly paying the stipulated interest of seven per centum per annum, would it, for a moment, be contended that the company still remained liable for the interest on the county bonds, simply because the road had not been completed clear across the County of Lancaster, as was originally contemplated in the charter of the company? Certainly no court of justice would tolerate the idea that the county, after having received from the company the very fund which, by the scheme of the act, was provided for the payment of the interest on its bonds, could require such interest to be paid by the company simply upon the ground that, technically, the road had not been completed in the county, as was originally contemplated. We do not see how the case supposed differs in principle from that presented by the facts of this case.

It must be remembered that the plaintiff was a member of the defendant corporation, and as such entitled to a voice, and a very potent voice, it would seem, from the amount of its stock, in the management and control of the affairs of the defendant company; and if that corporation determined, as we think it practically did, to abandon the extension of the railroad beyond the town of Lancaster, we see no reason why it may not have done so legally; and if that was done, then the road, when constructed as far as the town of Lancaster, should practically be regarded as completed in the county. Under the express terms of the act the preferred stock could only be issued "on the completion of the said railroad in the county," and as the stock has been issued by the company of which the plaintiff is a member, and has been received and is still retained by the plaintiff, we do not see how the plaintiff can now deny that the road has been completed. There is no evidence that the plaintiff has ever demanded, or even proposed, that the road shall be extended beyond the town

of Lancaster, as originally contemplated. On the contrary, by participating in the meeting at which it was resolved to lease the road to another company, and by actually voting its preferred stock in favor of such lease, it has voluntarily aided in placing it beyond the power of the defendant company to so extend the road, and the lease, as we have seen, simply authorizes, but does not require, the lessee to make such extension.

In addition to this it was stated in the argument here, and the statement was not denied, that the plaintiff is in the regular receipt of the dividends or interest on the preferred stock held by it, covenanted to be paid by the lessee of the road, and up to the time of the trial had actually received on this account the sum of seven thousand five hundred dollars. If this be so, we do not see how it is possible for the plaintiff, after having actually received a portion, at least, of the fund specially provided by the act of 1874 for the payment of the interest on its bonds, to demand that such interest shall be paid by the company. We do not, however, base our conclusion upon the receipt of this money by the plaintiff, but only mention it as additional evidence, if any such be needed, of the injustice and illegality of the plaintiff's claim.

It is argued, however, that inasmuch as the preferred stock was not actually delivered to the plaintiff until some time in July or August, 1882, and inasmuch as the lessee only covenanted to pay interest on this stock from the time when the road was turned over to it under the lease, the date of which does not appear in the "Case," though it could not have been earlier than the fall of 1882, as the lease was not executed until September 29, 1882, the defendant is at least liable for the interest which fell due on the county bonds on February 1, 1881, and February 1, 1882. It appears, however, that the certificate of preferred stock issued to the plaintiff bears date January 1, 1881, and it would bear interest from that date; and the fact that it was not actually received by the plaintiff until some time afterwards, cannot affect the question. The act, as we have seen, made alternative, or rather successive, provisions for the payment of the interest on the county bonds, and the latter was to be a substitute for the former. When, therefore, the plaintiff accepted the substi-

tute and retained, and still retains, the same, it cannot be allowed to claim the benefit of the provision for which such substitute was provided by the express terms of the act.

It is argued, however, for the respondent that the act of the county commissioners in accepting the preferred stock and voting it in favor of the lease was *ultra vires*, and, therefore, not binding upon the plaintiff. A corporation can act only through its officers or agents, and if it afterwards recognizes any act of its officers and accepts the benefit thereof, it cannot afterwards repudiate such act as *ultra vires*, even though such act, at the time it was done, may not have been within the scope of the powers of the officers doing such act. This proposition, resting upon the plainest principles of justice, is also well supported by the authorities. *Railway Company* v. *McCarthy* (96 *U. S.*, 258, and other cases cited by appellant's counsel), where it is said : "The doctrine of *ultra vires*, where it is invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong."

Here the plaintiff, through its duly constituted officers, as far back as 1882, accepted the preferred stock and used the same in voting for the lease, whereby third parties have become involved in large liabilities, and there is no evidence whatever that the county has ever, in any way, disavowed this act of their officers, although ample opportunity to do so has been afforded by the election of other county commissioners instructed to undo the alleged unauthorized act of the commisioners who represented the county in 1882 ; but, on the contrary, the plaintiff has continued to retain the preferred stock, receiving all the benefits to be derived therefrom, which the plaintiff now claims was received by its officers without proper authority, and does not now offer to surrender the stock and refund whatever amounts (if any) that may have been received thereon. Under these circumstances to allow the plaintiff to invoke the doctrine of *ultra vires* would not only "defeat the ends of justice," but would also "work a legal wrong."

But, in addition to this, we are not prepared to admit that the act of the county commissioners in 1882 in receiving the preferred stock was *ultra vires*. This board is invested by the con-

stitution with very large powers, having jurisdiction, not only over the several matters specified in section 19 of art. 4 of the Constitution, but also "in every other case that may be necessary to the internal improvement and local concerns of the respective counties." Now, here was a case affecting the internal improvement and local concerns of the county, and the board had full power to act therein. Who else was to determine when the road was completed in the County of Lancaster? Who else could receive the certificate of preferred stock? And even granting that they erred in determining this matter and in receiving the stock, their error was in a matter within their jurisdiction, and therefore not *ultra vires*.

It seems to us, therefore, that in any view of the case the Circuit Judge erred in instructing the jury to write a verdict for more than the thirty thousand dollars, and that there must be a new trial, unless the plaintiff will remit all in excess of that sum. This view renders it unnecessary to consider that ground of appeal which imputes error to the Circuit Judge in withdrawing all questions of fact from the jury and instructing them for what amount to write their verdict.

The judgment of this court is, that the judgment of the Circuit Court be reversed and the case remanded for a new trial, unless the plaintiff shall, within thirty days after written notice of the filing of the *remittitur* from this court in the Circuit Court, enter upon the record there a *remittitur* of the sum of thirty-six thousand dollars, and that upon this being done the judgment thus reduced be affirmed.