WHITE v. COMMERCIAL & FARMERS' BANK.

McELHANEY,. ADMX., v. KERR.

BLACKMON, ESTRIDGE & CO. v. ROCK HILL REAL ESTATE
AND LOAN CO.

1. CORPORATIONS—BANKS.—STOCKHOLDERS of a bank who sold their
   stock to the cashier while it was solvent, with instructions to trans-
   .fer same on the books of the bank, which was not done, are liable to
   creditors of bank for amount of stock originally held by them.
2. IBID.—IBID.—ULTRA VIRES.—A CORPORATION chartered under general
   laws prohibiting the use of its funds directly or indirectly in banking
   operations, is not liable to creditors of bank on stock subscribed and
   paid for by such corporation, on which it has collected dividends.
   Doctrine of *ultra vires* acts by corporations, discussed.

Before ALDRICH, J., York, February, 1903.    Affirmed.

Actions by A. H. White against Commercial and Farm-
ers' Bank *et al.;* Blanche McElhaney, admx., against R.
Lee Kerr *et al.,* and Blackman, Estridge & Co. against Rock
Hill Real Estate and Loan Co. The Circuit decree is as
follows:

"These consolidated causes came on to be heard at the
last term of this Court, upon the report of Thos. F. McDow,
Esq., referee, and various exceptions thereto. Several addi-
tional matters were also submitted.

"On December 6th, 1902, during the sitting of this Court,
various of said exceptions and matters submitted were dis-
posed of; some were continued and others reserved for
consideration and determination. These reserved issues are
now before the Court. My decree of December 6th, 1902,
must be read as a part of this decree.

"Let us consider the issues as to E. B. Mobley, John G.
Anderson and N. B. Williams. At the foot of the notes
of reference, held at Rock Hill, S. C., on November 7th,
1902, appears the following written agreement,
signed by the counsel of the parties: 'It is agreed

between plaintiff's counsel herein and counsel for defendants, E. B. Mobley, John G. Anderson and N. B. Williams, that the facts relating to the transfer of the Commercial and Farmers' Bank stock by John G. Anderson and N. B. Williams are the same in all respects as those relating to the transfer of said stock by E. B. Mobley, as shown by the testimony herein, excepting as to dates of transfer, the N. B. Williams stock having been transferred on the 6th day of January, 1900.    Under this agreement, N. B. Williams submits to the jurisdiction of the Court and his (answer) is to be regarded as duly served and filed.'

"As to E. B. Mobley, the referee held: 'I find that he transferred his twelve shares of stock to R. Lee Kerr on the 14th day of August, 1899, in good faith, for value received, and at the time of the transfer of said stock he instructed the said R. Lee Kerr to enter the transfer on the books of the bank; but that Kerr failed to carry out his instructions, and the attempted transfer failed to meet the requirements of sec. 1894, R. S., which provides that: 'No transfer of stock shall be valid, except as between the parties thereto, until the same shall have been regularly entered on the books of the corporation, etc.'    This statute not having been complied with, so far as the creditors of the bank are concerned, Mr. Mobley is liable for the sum of $1,200, the amount of his stock in said bank.    *Parker* v. *Bank*, 53 S. C., page 594.    Mr. E. B. Mobley has filed five exceptions to the conclusions of the referee.    The first is: 'Because the testimony shows, not only that E. B. Mobley transferred his stock to R. Lee Kerr on the 14th day of August, 1899, in good faith and for value, but also that he did all that a careful and prudent business man could reasonably do to effect a transfer on the books of the bank, and this relieved him of all liability incident to the subsequent ownership of said stock, and the said referee erred in not so holding.' There was no error in the referee's failing to find that E. B. Mobley 'did all that a careful and prudent business man could reasonably do to effect a transfer on the books of the

bank.' E. B. Mobley could, by process of law, have compelled the said transfer. He knew that a failure 'to effect a transfer' of the stock, on the books of the bank, continued his liability as a stockholder to the creditors of the bank. The act provides how stock shall be transferred, and, in mandatory terms, enacts that 'No transfer of stock shall be valid, except as between the parties thereto, until the same shall have been regularly entered on the books of the corporation.' Mr. Mobley's transfer to R. Lee Kerr was good as between them; but it was not *valid* as against the creditors of the bank. R. Lee Kerr was the agent of Mr. Mobley to make the transfer on the books of the bank, and the principal is liable in favor of creditors for the default of the agent. R. Lee Kerr may be liable in damages to Mr. Mobley for any loss he may sustain by reason of R. Lee Kerr's failure to transfer the stock on the books of the bank; but such liability is another reason why Mr. Mobley is liable to the creditors of the bank. This exception is overruled.

"E. B. Mobley's second exception: 'Because the testimony shows that R. Lee Kerr, the purchaser of E. B. Mobley's twelve shares of stock, was the cashier of the Commercial and Farmers' Bank and its chief executive officer; that he had charge of all the bank's books, including its stock certificate and stub book, which provided for entering of stock transfers; that his name was signed to the stock certificates issued by said bank, and he was thus the proper officer to make the transfer of the stock; that he was duly authorized by the terms of the written assignment on E. B. Mobley's stock certificate to make the proper transfer on the books of the bank; that he was specifically instructed to make such transfer, and promised E. B. Mobley that this would be done; from all of which it appears that said E. B. Mobley did all that a reasonably prudent and careful man could do to make such transfer complete, and the said referee should have held that the said E. B. Mobley was thus absolved from any liability incident to the subsequent ownership of said stock, even though the transfer was not entered

upon the books of the bank, and the said referee erred in not so finding and holding.' This exception, argumentative in its statement, is practically the same as the first, and is overruled for the reasons already stated. It is not necessary for me to refer to R. Lee Kerr, his methods of conducting the corporation with which he was connected as an officer; but, according to the testimony and comments of counsel based thereon, it does not seem that a reasonably prudent and careful business man would have dealt with him as Mr. Mobley did. The fact that others around Rock Hill dealt with R. Lee Kerr as E. B. Mobley did, is not conclusive of the fact that Mr. Mobley's conduct was reasonable or careful or prudent, for if reasonable care and prudence had been exercised by the stockholders of the bank, neither the bank nor the stockholders would be in the condition they are now in.

"The third exception is: 'Because the statutory provision in the act under which The Commercial and Farmers' Bank was incorporated, that "no transfer of stock shall be held valid except as between the parties thereto until the same shall have been regularly entered upon the books of the corporation," was intended solely for the benefit and protection of the corporation itself and its stockholders, and not for the benefit of creditors or depositors, and the referee erred in not so holding.' The liability of a stockholder for a sum equal to the amount of his stock is for the protection of the creditors of the corporation, and the statute regulating the transfer of stock was for the benefit of creditors, and, as regards creditors, the status of a stockholder is determined under the act. How can the act be for the benefit and protection of the corporation itself and the stockholders, when the act, in express terms, excepts from its provisions 'the parties thereto,' viz: the transfer. Only a stockholder in a bank can transfer stock, because no one but a stockholder has stock therein. The party to whom the stockholder sells, when he has duly obtained his certificate, is the other party to the transaction. Clearly the act was not intended for

the protection of stockholders.    There is nothing to warrant the assumption that the act was not intended for the benefit of creditors, if it be admitted or declared that it is, also, of benefit to the corporation.    It may benefit both, it is certainly for the benefit of creditors.    This exception is overruled.

"'4. Because the said referee erred in not finding and holding that E. B. Mobley, having sold and transferred his twelve shares of stock in good faith and for value on the 14th day of August, 1899, while the said bank was solvent and a going concern, the liability attaching to said stock went with it to his transferee.'    Under the terms of the act, the transfer was valid as between E. B. Mobley and R. Lee Kerr, and, as between these parties, the liability attaching to said stock may be upon R. Lee Kerr.    It is very different as between Mobley, the stockholder on the books of the bank, and the creditors of the bank.    The act is not restricted to insolvent corporations, it applies to solvent and going corporations.    The evil that the act remedied was collusive transfers of stock, and to provide a means whereby the stockholders of corporations could be ascertained for any legitimate purposes by proper parties.    Hence the law providing for lists of stockholders, certificates of stock, and the method of transfers of stock.    When the act says, 'that no transfer of stock shall be valid until the same shall have been regularly entered on the books of the corporation,' it means that, until the law is complied with, the transfer is invalid.    This exception is overruled.

"'5. Because the said referee erred in not holding that the liability of stockholders of the Commercial and Farmers' Bank was secondary, and that E. B. Mobley having sold while said bank was solvent and a going concern, is not liable as a stockholder for any of the debts of said corporation.    It does not appear that at the time E. B. Mobley sold said stock to R. Lee Kerr, the bank was a solvent concern.    It does appear that at the time the bank went into the hands of the receiver, when it was insolvent and had

ceased business, that E. B. Mobley's name appeared upon the books of the bank as a stockholder; and that, under the law, he is such stockholder for the benefit of the creditors of the bank.' This exception is overruled.

"Wherefore, it is ordered, adjudged and decreed, that the exceptions of E. B. Mobley to the report of the referee herein be and hereby are overruled; that said report be and hereby is affirmed; and that the plaintiffs have and hereby are given judgment in their favor, and against E. B. Mobley, defendant, in the sum of $1,200."

"As to John G. Anderson, the referee reports: 'I find as a matter of fact, that for value received, he transferred his stock amounting to ten shares to R. Lee Kerr in good faith on the 18th day of September, 1899, but that said transfer was never entered upon the books of the bank, and hence, under the statute and authority above cited, the said transfer is invalid, so far as the creditors of the Commercial and Farmers' Bank are concerned; and that the said John G. Anderson is liable in the sum of $1,000, being the amount of shares held by him in said bank. The attorneys for the defendants, Mobley and Anderson, contended that if these defendants are liable at all on their stock, that said liability is secondary. I cannot agree with this view of the law, and I hold that the liability of these defendant stockholders is primary. But even if defendant's attorney is correct in his view of the law, it could not avail him anything in this action, for the reason that it has been proven and admitted that the Commercial and Farmers' Bank is insolvent.'

"The exceptions of John G. Anderson to the report of the referee are substantially, if not exactly, the same as those of E. B. Mobley, and for the reasons stated in considering the exceptions of E. B. Mobley, the exceptions of J. G. Anderson are overruled.

"As to the liability of the stockholders to creditors, whether primary or secondary, I do not see how it can be of any consequence in this case. It might be admitted that the liability was secondary and yet these defendants would

be liable; because, as the referee finds, 'it has been proven and admitted that the Commercial and Farmers' Bank is insolvent.'

"Wherefore, it is ordered and adjudged, that the exceptions of J. G. Anderson to the report of the referee herein be and hereby are overruled; that said report be and hereby is confirmed; and that plaintiffs have and hereby are given judgment in their favor and against J. G. Anderson, defendant, in and for the sum of $1,000.

"The referee reported as to N. B. Williams: 'This gentleman appeared in action No. 1, above, through W. J. Cherry, Esq., by Mr. Cherry answering for him. In October last, Mr. Cherry asked for leave to withdraw said answer, stating that he had served the answer in response to a request of R. Lee Kerr, and that Mr. Williams had denied Kerr's authority in the premises. Mr. Cherry subsequently appeared for Williams, to enter a plea to the jurisdiction, on the ground that Williams had never been served with the process. If Williams properly appeared in this action, that is as good as service; and in the absence of formal proof before me by Williams personally to the contrary, I hold that he is a proper party in said action, and has waived service by appearing and answering; and, therefore, I hold that he is liable for the sum of $500, the same being the amount of his stock.' The agreement of counsel, heretofore stated, disposed of the question of jurisdiction. The exceptions of N. B. Williams are the same as those of E. B. Mobley, and are overruled.

"Wherefore, it is ordered, adjudged and decreed, that the exceptions of N. B. Williams to the report of the referee herein be and hereby are overruled; that the report of the referee be and hereby is affirmed; and that the plaintiffs have and hereby are given judgment in their favor, and against N. B. Williams, defendant, in and for the sum of $500.

"As to the Rock Hill Real Estate and Loan Company, the referee reports: 'This company denies its liability as a

stockholder on the ground that it is not authorized or permitted by its charter to become a stockholder in the Commercial and Farmers' Bank or in any other bank; that the thirty shares of stock was subscribed for by R. Lee Kerr without the authority of the board of directors of said loan company; that the act of subscription was *ultra vires* and void both under the charter of the loan company and under the general corporation laws. I find as a matter of fact that R. Lee Kerr was the executive officer of the Rock Hill Real Estate and Loan Company; that he attended to most of its business without consultation with any of its officers; and that its officers and directors acquiesced and allowed him almost unlimited authority in the conduct of its business; nevertheless, in this instance of subscribing to the stock of the Commercial and Farmers' Bank, the directors of the Rock Hill Real Estate and Loan Company, or at least a majority of them, were aware of the fact that the said company had subscribed for thirty shares of stock in the Commercial and Farmers' Bank; that the said stock was issued to the company and paid for, and it received dividends on the same; that it pledged said stock as security for its obligations, and in every way ratified Kerr's act in subscribing for the same. I am free to state that I do not think that under the charter of the Rock Hill Real Estate and Loan Company, that the said company had the right to purchase or subscribe for or hold stock in the Commercial and Farmers' Bank; still, when the stock has been actually issued and paid for, and the company has received dividends on it, used it as collateral for its obligations, it is now too late, when the said bank is insolvent, for it to plead the act of subscription as *ultra vires*. It is now estopped from denying its liability as a stockholder, and under section 1775, Code of 1902, vol. 1, the said Rock Hill Real Estate and Loan Company is liable to the amount of $3,000, on account of the thirty shares of stock in the Commercial and Farmers' Bank.'

"The Rock Hill Real Estate and Loan Company excepts to the aforesaid findings of the referee upon the following grounds: '1. In holding as matter of fact that the act of R. Lee Kerr in making the alleged subscription on behalf of said company to stock of the C. & F. Bank was acquiesced in by the officers and directors of the loan company.   2.  In holding that a majority of the directors of the loan company were aware of the subscription.   3.  That the loan company "in every way ratified Kerr's act in subscribing for said stock."   4.  In holding that "it is now too late, when the bank is insolvent, for it to plead the act of subscription as *ultra vires*.   It is now estopped from denying its liability as a stockholder."   5.  In holding that said loan company and the receiver is liable to the amount of $3,000 on said alleged subscription.   6.  For error in not holding that the *ultra vires* act in this instance could only be ratified, if at all, by the unanimous body of stockholders.   7.  For error in not holding that agents cannot ratify their own *ultra vires* acts.'

"The Rock Hill Real Estate and Loan Company is sued, in this action, as one of the stockholders of the Commercial and Farmers' Bank.   Its answer to this suit is a general denial.   The Rock Hill Real Estate and Loan Company is itself a corporation on the instalment plan, and its charter is found in XX. Statutes, page 248.   No where in its charter is any authority given whereby it may invest its funds in the stock of another corporation.   Its charter prescribes, defines and limits the purposes for which it is created, and for which its funds may be employed.   Section 7 of the charter of the R. H. R. E. & L. Co. (20 Stat., p. 250,) incorporates 'the restrictions and liabilities' of the general incorporation act of 1886, found in XIX. Statutes, page 540, *et seq.*   This act does not confer upon one corporation the right to subscribe to the capital stock of another; but, to the contrary, subdivision '(E)' of sec. 22 of that act (p. 547), specifically declares: 'That no part of the capital·stock of any of the funds of such corporation shall at any time during the con-

tinuance of their charter be used or employed, directly or indirectly, in banking operations, or for any purpose whatsoever inconsistent with the provisions of their respective charters.' So that the charter of the R. H. R. E. & L. Co. should be read with this provision from the general act of 1886 as written in it. If the R. H. R. E. & L. Co. had not been prohibited from subscribing to the capital stock of the bank, it would nevertheless, under the general law, have been prohibited from doing so. One corporation has no right to organize another corporation, or to take stock in another corporation, unless such right is conferred by its charter. 1 Morawetz on Priv. Corp., sec. 433.

"This doctrine is affirmed in this State in the case of *Lagrone* v. *Timmerman,* 46 S. C., 410. This case holds, 'That a corporation, which is a creature of the legislature, can have no powers except such as are conferred by its charter, either in express terms or by necessary implication, is a proposition too well settled to need authority to sustain it.' It is no answer to say that the R. H. R. E. & L. Co. did not organize the bank; that it took but $3,000 worth of stock in the bank, which was only a small portion of its capital, for the prohibition extends to such act in whole or in part. The general act of 1886, *supra,* provides that 'no part' of the capital stock, 'or any of the funds' of such corporation, shall 'at any time' be either 'used or employed, directly or indirectly, in banking operations.' I think that the referee was right when he reports that 'I am free to state that I do not think that under the charter of the Rock Hill Real Estate and Loan Company, that the said company had the right to purchase, or subscribe for, or hold stock in the Commercial and Farmers' Bank.' The purchasing, subscribing for and holding of said stock by said company was not only without warrant of law, but also in direct violation of law; it was an *ultra vires* act. R. Lee Kerr was a director in and treasurer of the R. H. R. E. & L. Co., and a director in and cashier of the bank. He was the organizer and promoter of the bank. The referee finds, 'in this instance of sub-

scribing to the stock of the Commercial and Farmers' Bank, the directors of the Rock Hill Real Estate and Loan Company, or at least a majority of them, were aware of the fact that the said company had subscribed for thirty shares of stock in the Commercial and Farmers' Bank.' This may be correct; but R. Lee Kerr testified that he made said subscription without consulting the board of directors or any of the stockholders. This seems to be the fact, and it may be that after Kerr had so acted, a majority of the directors were aware of the fact. A. H. White, who signed as president of the bank the certificate of stock of the loan company, was not a director in the loan company at that time.

"The interest that Kerr had in the bank and the loan company, both being corporations, disqualified him from dealing between them. 1 Morawetz on Corp., secs. 520, 521, 528 and 530. In *Duncan* v. *City of Charleston,* 60 S. C., 558, this doctrine is sustained and enforced. It follows that the act of the loan company in subscribing for stock in the bank was *ultra vires,* and that action of Kerr in subscribing for the stock as the agent of the loan company, and accepting said subscription as the agent of the bank, acted as agent of both parties, in matters in which he was officially and personally largely interested, and that such action was voidable, to say the least, because contrary to law.

"The referee does not, at least in terms, find that the act of Kerr in subscribing for the stock was ratified by the loan company, but such position was taken by plaintiffs at the hearing. If the argument is correct that Kerr absolutely controlled the affairs of the loan company, then the only ratification that can be called to aid the transaction are the acts of Kerr himself. He, as cashier of the bank, credited the loan company, of which he was treasurer, with dividends in July, 1899. He, as treasurer of the loan company, pledged the certificate of stock to secure loan to the loan company. The same agent that made the illegal and *ultra vires* contract, is the one who ratified it. So that we are still within the same circle.

"The referee reports that the loan company 'in every way ratified Kerr's act in subscribing for the same,' the stock; but a casual reading of the report will show that the stockholders never ratified it. The acts relied upon as amounting to a ratification of the subscription are: 1st. That the stock was issued to the company and paid for; 2d. It received dividends on the same, and 3d. That it pledged said stock as security for its obligations. The first ground is a part of the *ultra vires* contract. The issuance of and payment for the stock is the act complained of. To hold that the issuance of the stock to the loan company, and its payment for the same, estops it from pleading that the purchase was *ultra vires,* is simply to ignore the law. It amounts to saying that a prohibited act done despite the prohibition is, by reason of the doing of said act, upon the doctrine of estoppel, released and relieved of the prohibition. The second and third grounds, the reception of a dividend, and the pledging of the bank stock, were known only to the directors, 'or at least a majority of them;' but it was not known to them 'as directors,'·that is, the matter never came before them, the directors assembled as a board; and the stockholders, outside of the directors, or a majority of them, had no knowledge of the facts referred to. To hold all the stockholders of the loan company .liable, whether they be legal or illegal stockholders, is to say that the illegal and unwarranted act of R. Lee Kerr, done in defiance of the law of the land, and in utter disregard of the rights of the stockholders, is binding upon the stockholders, when the illegal and unwarranted conduct and act of Kerr was known to only a portion of the directors, and not to the stockholders generally.

"The essential elements of estoppel are stated in 7th vol. A. & E. Ency. of Law (1st ed.), on page 12, *et seq.* On page 15 it is stated as the third essential element, that 'The party relying on the representation must have been ignorant of the facts.' The plaintiffs had as much knowledge of the law, the charter of the loan company, as that company had.

The charter was a public act. The loan company did not and could not have concealed the charter from the plaintiffs, and if the plaintiffs were ignorant of anything, it was the law of this State. Plaintiffs entered into contractual relations with the defendant; for the liability of the loan company came into existence, if at all, when plaintiffs entered into their contracts with the bank. The law of the State entered into that contract, and that law, which makes a bank stockholder liable, as is claimed in this case, also, in plain terms, actually prohibited the loan company from becoming a stockholder in a bank. 'A contract of a corporation, which is *ultra vires* in the proper sense, that is to say, outside the object of its creation as defined by the law of its organization, and that from beyond the power conferred upon it by the legislature, is not voidable only, but wholly void and of no legal effect. The objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it.' *Central Transp. Co.* v. *Pullman Palace Car Co.,* 139 U. S., 24, 59 to 60. *Jacksonville &c. Ry. Co.* v. *Hooper,* 160 U. S., 514, 524, 530. *California Bank* v. *Kennedy,* 167 U. S., 368.

" 'The doctrine of *ultra vires,* by which a contract made by a corporation beyond the scope of its corporate powers is unlawful and void, and will not support an action, rests, as this Court has often recognized and affirmed, upon three distinct grounds: The obligation of any one contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders not to be subject to risks which they have never undertaken; and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law.' *California Bank* v. *Kennedy,* 167 U. S., 368. The Court, in support of its decision, cite a great number of American and Eng-

lish cases. In a similar case, *California Bank* v. *Kennedy,* 167 U. S., 369, the Court says: "The power to purchase or deal in stock of another corporation, as we have said, is not expressly conferred upon national banks' (in the case at bar, the loan company was expressly prohibited from purchasing or dealing in bank stocks), 'nor is it an act which may be exercised as incidental to the powers conferred. A dealing in stocks is consequently an *ultra vires* act. Being such, it is without efficacy. *Pearce* v. *Railroad Co.,* 22 How., 441, 445. Stock so acquired creates no liability to the creditors of the corporation whose stock was attempted to be transferred. (Cook on Stock and Stockholders, vol. 1, p. 435, note 1, to sec. 316, and authorities there cited.)' 'The claims that the bank, in consequence of the receipt by it of dividends on the stock of the savings bank, is estopped from questioning its ownership and consequent liability, is but a reiteration of the contention that the acquiring of stock by the bank under the circumstances disclosed was not void but merely voidable. It would be a contradiction in terms to assert that there was a total want of power by any act to assume the liability, and yet to say that by a particular act the liability resulted. The transaction being absolutely void, could not be confirmed or ratified.' *Ib.,* 371.

"As was said by the Supreme Court of the U. S. in *Union Pacific Railway* v. *Chicago &c. Ry.,* 163 U. S., 564, speaking through Mr. Chief Justice Fuller (p. 581) : 'A contract made by a corporation beyond the scope of its powers, express or implied, on a proper construction of its charter, cannot be enforced, or rendered enforceable by the application of the doctrine of estoppel.'

"While, therefore, I concur with the referee in the opinion that the subscription of the loan company to the stock of the bank, as made in this case, was an *ultra vires* act, I do not concur in his view, either as a finding of fact or a conclusion of law, that the stockholders of the loan company, or the loan company itself, ratified such subscription; or that the loan company, or the stockholders of the loan com-

pany, are estopped from asserting that said act of subscription was *ultra vires*.

"I hold, as a conclusion of fact and law, that the aforesaid act, subscription by the Rock Hill Real Estate and Loan Co. to the capital stock of the Commercial and Farmers' Bank, was, and is, *ultra vires;* and that the plaintiffs cannot sustain this action against said loan company.

"Wherefore, it is ordered, adjudged and decreed, that the exceptions of the Rock Hill Real Estate and Loan Co. to the report of the referee herein be and hereby are sustained; that the report of said referee herein as to said loan company be and hereby are reversed; and that the action of the plaintiffs herein, as against the Rock Hill Real Estate and Loan Co., defendants herein, be and the same hereby is dismissed with costs.

"It might be said, that as all of the parties are before the Court, that the Court should go on and dispose of all issues which might be presented in this case. But I am not certain that all the parties interested in such possible issues are before the Court, and I am confirmed in my view by the statement of the counsel for plaintiff, submitted in writing as follows: 'If the C. & F. Bank was a solvent corporation, and it were worth while to do so, the Real Estate and Loan Company might now bring its action to recover the money illegally paid for the thirty shares of capital stock in the bank.'

"The answer of the loan company is a general denial, and sets up no affirmative defense.

"The issues in the consolidated causes not disposed of in my former decree, nor in this decree, are continued."

Defendants, Mobley, Anderson and Williams, appeal on following exceptions:

"1. Because, as respectfully submitted, his Honor erred, in not finding that each of these defendants, in the sale and transfer of his Commercial and Farmers' Bank stock to R. Lee Kerr, made use of reasonable and proper care, prudence

and diligence to effect the entry of the transfer of his said stock on the proper book of said bank, and in not holding that the use of such care, prudence and diligence relieved them of all liability incident to the ownership of said stock.

"2. Because of error, holding that these defendants are liable to creditors for the default of R. Lee Kerr as their agent to transfer their stock; whereas, it is respectfully submitted, his Honor should have held that said Kerr, as cashier of said bank, was charged with the duty of entering its stock transfers, and that these defendants, having delivered their stock to him with proper directions, were not liable for his omission.

"3. Because of error, holding that these defendants are rendered liable to creditors of said bank *solely* from the fact of their names being found upon its stock books at the time of its going into the hands of a receiver, and without regard to any knowledge or the use of due diligence by them, or to any knowledge by the creditors as to said books.

"4. Because of error, not holding that the statutory provision, 'No transfer of stock shall be valid except as between the parties thereto until the same shall have been regularly entered upon the books of the corporation,' was designed solely for the safety and protection of the corporation itself and its stockholders, and not for the benefit of creditors or depositors.

"5. Because each of these defendants, having sold and transferred his stock in good faith prior to the commencement of these actions and before the said bank was adjudged insolvent, is thus relieved of all liability to creditors of said bank, and, it is respectfully submitted, his Honor erred in not so finding and holding.

"6. Because, it is respectfully submitted, his Honor erred in not holding that the liability of stockholders of the Commercial and Farmers' Bank is secondary, and that these defendants, having sold their stock while said bank was solvent and a going concern, are not liable as stockholders for any of the debts of said corporation."

Plaintiffs, Blackmon, Estridge & Co., appeal on following exceptions:

"It is respectfully submitted that his Honor erred:

"1. In holding that the Rock Hill Real Estate and Loan Co. was without authority to purchase, subscribe for or hold stock in the Commercial and Farmers' Bank of Rock Hill, and that such purchasing, subscribing for and holding of said stock by the said loan company was an *ultra vires* act.

"2. In holding that the interest R. Lee Kerr had in said bank and loan company, both being corporations, disqualified him from dealing between them.

"3. In holding that the subscription to and holding of said stock was not ratified by the loan company, and that it cannot be.

"4. In holding that the Rock Hill Real Estate and Loan Company is not estopped from denying that it is a stockholder in the Commercial and Farmers' Bank, and liable as such.

"5. In holding as a conclusion of law and fact that the subscription by the Rock Hill Real Estate and Loan Company to the capital stock of the Commercial and Farmers' Bank was an *ultra vires* act, and that the plaintiffs cannot sustain their action against the said loan company."

*Messrs. Wm. J. Cherry, T. Yancey Williams* and *D. E. Finley,* for Mobley, Williams and Anderson. *Mr. Cherry* cites: *Parties do not usually deal with corporations on faith in stockholders:* 49 N. Y., 216; 46 N. Y., 331; 34 N. Y., 80; 10 Ala., 82; 40 Ga., 411; 53 Ga., 532; 50 Minn., 38; 35 Cal., 653; 40 Cal., 614; 61 Miss., 611; 11 Pa. St., 120; 53 S. C., 594; 11 S. C., 486. *Bank by failure to keep a "stock journal" waived statutory provision as to transfers of stock:* 49 N. Y., 216; 132 N. Y., 250; 3 Biss., 431. *Bona fide sale of stock and reasonable care and diligence to transfer, relieves liability:* L. R., 3 Eq., 77; L. R., 9 Eq., 588; L. L., 4 Ch., 768; 16 Beav., 84; 19 Beav., 107; 1 Mor. Corp., sec. 172; Clark on Corp., 581; Thomp. Liab.

Stock., 274; 118 U. S., 660; 141 U. S., 132; 50 F. R., 394; 39 F. R., 319; 132 N. Y., 250; 5 Corp. Ca. (N. S.), 331; 19 C. C. A., 414.

*Messrs. Wilson & Wilson,* for Blackmon, Estridge & Co., cite: *Under all facts in this case, the loan company is liable on its subscription of stock:* 160 U. S., 574; 167 U. S., 368; Clark on Corp., 483, 498, 499, 495; 34 N. H., 378; 17 Ency., 130, 133, 135, 136, 137, 138.

*Messrs. Witherspoon & Spencers,* contra, cite: *Defendant appellants were stockholders of bank at date of insolvency, and are liable as such:* Rev. Stat., 1529, 1539; Con., 1895, art. IX., secs. 9, 18; 53 S. C., 594; 14 A. D., 526. *Bona fides and prudence cannot relieve them:* 50 F. R., 394; 19 C. C. A., 414.

*Mr. Jas. F. Hart,* for loan company, contra, cites: *Did loan company have power to subscribe the stock:* 22 St., 248; 7 Ency., 2 ed., 811; 46 S. C., 410. *Kerr, as agent of one corporation, cannot contract with himself as agent of another:* 60 S. C., 558; 1 Mor. on Corp., secs. 520, 521, 528, 530. *Acts beyond corporate powers cannot be ratified:* 163 U. S., 564; 167 U. S., 366; 21 N. Y., 285; 2 Mor. on Corp., 2 ed., secs. 619, 622, 628, 666; 23 Ency., 424, 426; 12 S. C., 352.

July 1, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. The following statement appears in the record:

"The first above stated action was commenced on the 3d day of February, 1900, for winding up the affairs of the Commercial and Farmers' Bank of Rock Hill, S. C., insolvent, by the appointment of a receiver to collect and distribute its assets, including the fund due from its stockholders; all of said stockholders being made defendants. A

receiver was duly appointed in this action, who is now' administering the affairs of said bank.

"The other two actions, in the nature of creditors' bills, were brought about the same time against certain of the stockholders of said bank (named also as defendants in the first action) to recover the amounts of their individual liability to depositors.

"The said three actions were consolidated by an order of the Court, dated the 29th day of May, 1900.

"By amended complaint in the first above stated action, E. B. Mobley, John G. Anderson and N. B. Williams were made defendants therein on the 2d day of May, 1900. These three defendants are not parties to either of the other two actions. As none of the parties to the second above stated action have anything to do with this appeal, they are, to avoid confusion, named as respondents.

"A referee was appointed to take the testimony and report upon all of the issues of law and fact; and these consolidated actions came up for a hearing at the November (1902) term of the Circuit Court for York County, upon so much of said referee's report as related to the liability of stockholders, and exceptions thereto; all other issues being reserved. Upon these issues, his Honor, James Aldrich, filed his decree herein on the 9th day of February, 1903. E. B. Mobley, John G. Anderson and N. B. Williams, defendants in the first action, gave due notice of their intention to appeal from the said decree in so far as it held them liable as stockholders, and subsequently duly served their exceptions. The plaintiffs, Blackmon, Estridge & Co., gave due notice of their intention to appeal from said decree in so far as it held that the Rock Hill Real Estate and Loan Co. was not liable as a stockholder, and thereafter, within the time required by law, served their exceptions."

The decree of his Honor, the Circuit Judge, and the appellants' exceptions will be set out in the report of the case.

While the decree fully and ably disposes of all the questions raised by the said exceptions, we, however, deem it

·advisable to add some words in explanation of the principle under which the Rock Hill Real Estate and Loan Company is ·enabled to escape the statutory liability imposed upon the stockholders of the Commercial and .Farmers' Bank, on the ground that its contract for subscription to the shares of stock was prohibited by statute and was, therefore, *ultra vires.* There is a general discussion of this subject in *Lancaster County* v. *R. R. Co.,* 28 S. C., 142, 5 S. E., 338, and *Williamson* v. *Association,* 54 S. C., 595, 32 S. E., 765. In the last mentioned case the Court quotes with approval the following language from *B. B. Ry. Co.* v. *McDonald,* 60 Am. St. Rep., 172: "The general rule is that where a private corporation has entered into a contract not immoral in itself *and not forbidden by any statute,* and it has been in good faith performed by the other party, the corporation will not be heard on a plea *of ultra vires*" (italics ours). The Court, in the case of *Vought* v. *Eastern B. & L. Assn.,* 172 N. Y., 508, thus states the principle: "We deem it unnecessary at this time to determine whether the defendant was authorized by that statute to enter into such contracts; for if we assume that the making of them was in excess of the express power conferred upon the corporation by that statute, still, as the contracts involved no moral turpitude, *and did not offend any express statute,* they were not illegal in a sense that would prevent the maintenance of an action thereon. It is now well settled that a corporation cannot avail itself of the defense of *ultra vires,* when the contract has been in good faith fully performed by the other party, and the corporation has had the benefit of the performance of the contract. As has been said, corporations like natural persons have power and capacity to do wrong. They may in their contracts and dealings break over the restraints imposed upon them by their charters, and when they do so, their exemption from liability cannot be claimed on the mere ground that they have no attributes or facilities which render it possible for them thus to act. While they have no right

to violate their charters, yet they have the capacity to do so, and are bound by their acts, where a repudiation of them would result in manifest wrong to innocent parties, and especially where the offender alleges its own wrong to avoid a just responsibility. It may be that while a contract remains unexecuted upon both sides, a corporation is not estopped to say in its defense that it had not the power to make the contract sought to be enforced; yet, when it becomes executed by the other party, it is estopped from asserting its own wrong, and cannot plead that the contract was beyond its power" (italics ours). This language is quoted with approval in *Eastern B. & L. Assn.* v. *Williamson,* 23 Sup. Ct. Rep., 527.

In *Central Transp. Co.* v. *Pullman Pal. Car Co.,* 139 U. S., 60, it is said: "The Courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money parted with on the faith of the unlawful contract to be recovered back or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract nor according to its terms, but on an implied contract of the defendant to return, or, failing to do that, to make compensation for the property or money which it had no right to retain. To maintain such an action was not to affirm but disaffirm the unlawful contract."

Lord Mansfield, in *Holman* v. *Johnson,* 1 Comp., 341, thus states the rule: "The objection that a contract is immoral or illegal as between the plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of policy which the defendant has the advantage of, contrary to the real justice as between him and the plaintiff by accident, if I may so say. The principle of public policy is this: *Ex dolo malo non oritur actio.* No Court will lend its aid to

a man who founds his cause of action upon an immoral or an illegal act."

The Court, in *Pullman Pal. Car Co.* v. *Central Transp. Co.,* 18 Sup Ct. Rep., 808, after quoting the foregoing language from the two cases last mentioned, proceeds as follows: "The cases upholding this doctrine are numerous and emphatic. Indeed, there is really no dispute concerning it, but the matter of controversy in this case is as to the extent to which the doctrine should be applied to the facts herein. Many of the cases are referred to and commented upon in the opinion delivered in the case, in 139 U. S., 24, II. Sup Ct., 487, already cited. The right to the recovery of the property transferred under an illegal contract is founded upon the implied promise to return or make compensation for it. For illustrations of the general doctrine applied to particular facts, we refer in the margin to a few of the multitude of cases on the subject. They are substantially unanimous in expressing the view that in no way and through no channels, directly or indirectly, will the courts allow an action to be maintained for the recovery of property delivered under an illegal contract, where in order to maintain such recovery it is necessary to have recourse to that contract. The right of recovery must rest upon a disaffirmance of the contract, and it is permitted only because of the desire of the courts to do justice as far as possible to the party who has made payment or delivered property under a void agreement, and which in justice he ought to recover. But courts will not in such endeavor permit any recovery which will weaken the rule founded upon the principles of public policy, already noticed."

Under the caption, "Provisions Applicable to Corporations Generally," in the Code of Laws, section 1843 (subdivision E), appears the following: "No part of the capital stock or any of the funds of such corporation shall at any time during the continuance of their charter be used or employed, directly or indirectly, in banking operations, or for any purpose whatsoever inconsistent with the provisions

of their respective charters." Section 1775 of the Code of Laws is as follows: "The stockholders of banks shall be liable to the amount of their respective share or shares, and five per cent. thereof in addition thereto, for all of its debts and liabilities upon note, bill or otherwise."

The foregoing cases show that a contract which is *ultra vires* cannot be made the foundation for the liability of the corporation, and, furthermore, that a corporation cannot be made liable on a contract which the law prohibits it from entering into. When the Rock Hill Real Estate and Loan Company purchased the shares of stock in the Commercial and Farmers' Bank, it was in violation of the statute. The Court will not lend its aid in the enforcement of rights growing out of a contract expressly forbidden by statute, but will leave the parties to the unlawful contract where it finds them.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.