14465

NETTLES v. SOTTILE *ET AL.*

(191 S. E., 796)

2

September, 1936.

4

26

*Mr. J. C. Long,* for appellants, cites:

*Messrs. Eugene S. Blease, Stephen Nettles* and *John I. Cosgrove,* for respondent, cite:

April 14, 1937.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Judge Bellinger heard this case and has written an able decree, which will be reported, and which states so clearly the cardinal facts and issues involved, as to make it unnecessary to make a preliminary statement of them.

It is only necessary to say that the plaintiff brought the action, as Receiver, to recover of the defendants, as stockholders of the Peoples State Bank of South Carolina, now in process of liquidation, the stockholder's liability imposed upon them as such stockholders.

The defendants, by answer, set up various defenses. The plaintiff demurred to the answer, which demurrer was sustained. The circuit decree succinctly and understandingly states the issues made by the pleadings.

From the decree the defendants appeal upon eleven exceptions, which they elect to argue under four heads, viz.:

(1) Plaintiff is not the proper party to bring this suit (Exception XI).

(2) Plaintiff is barred by election of remedies from maintaining this action (Exceptions IV, V, and VII).

(3) The good faith of the defendants is a good defense, and the corporate fiction should not be disregarded (Exceptions I, II, and III).

(4) If the defendants are liable, this liability is several and not joint (Exception IX and X).

With the consent of the Court, Mr. Schoolfield and Mr. A. F. Woods, of Marion, have filed a brief as *amicus curiae* in behalf of Mr. Lide; and Mr. Want, of Darlington, in behalf of himself, has filed a brief as *amicus curiae*.

None of these attorneys is engaged in this case, but they are interested in cases of like nature, brought by the plaintiff as Receiver.

The Court is satisfied with the disposition made by the circuit decree of the issues made by the exceptions, except as to certain modifications hereinafter set forth.

In other words, the Court is satisfied with the conclusion that the plaintiff had the right to bring this action, and that he is not debarred from maintaining it by reason of having made an election of remedies. The Court likewise concurs in the conclusion reached by the Circuit Court, to wit: "The ownership of bank shares by a private corporation in South Carolina is not valid and legal, but, on the contrary, is illegal and void. A Court of Equity, therefore, will look through the corporate entity of the corporation to the real owners of the bank shares, to wit, its stockholders, and assess against them the liability attaching to the ownership thereof."

If this language be confined in its application to this case alone, there is no question of its pertinency; nor is there a doubt that it is a sound proposition of law in its proper application. The Circuit Court has reached the conclusion, and we concur in it, that the Palmetto Brokerage Company was organized as a holding company and that the 900 shares of the stock of the Peoples State Bank of South Carolina held by Albert Sottile were assigned to the said Palmetto Brokerage Company for the purpose of evading the statutory liability attaching to such ownership. So far so good.

But in the treatment of this issue the Circuit Judge has made certain pronouncements of law which to us seem to be too broad in principle, and which seem not to be necessary to the determination of this case.

Let it be borne in mind that this Court approves the rule declared by the Circuit Court, to wit: "Where the corporate form of organization is adopted or a corporate entity is asserted *in an endeavor to evade a statute or to modify its intent,* courts will disregard the corporation or its entity and look to the substance or reality of the matter." (Italics added.)

But the circuit decree states this: "The use of the corporate entity for the purpose of holding bank stock is a development of comparatively recent origin. As a matter of fact, I have been cited to no cases involving a corporation used as a holding company for bank stock prior to the debacle of 1929. In every considered case, however, in which this question has been raised, the courts have not hesitated to disregard the corporate identity, *regardless of the particular plan or schedule in use,* and attach the liability to the true owners of the bank shares." (Italics added.)

If, by the words we have italicized above, the Circuit Court meant to limit its language to cases in which a corporation has held the stock as a "plan or scheme" to evade liability, or perpetrate a fraud, with such application we have no fault to find; but, if it is intended to say that in every instance in which a private corporation in this State has bought bank stock as an investment the stockholders may be held individually liable for the stock, we think the proposition is too broad, and is not necessary to be declared in this case in which there is no doubt of the fact that the Palmetto Brokerage Company was created as a holding company of the 900 shares of the stock of Peoples State Bank of South Carolina, and that this stock was assigned to it by Albert Sottile for the purpose of evading the statutory liability about to attach to it.

But let us suppose that a private corporation already existing and doing a lawful business invest the funds of the corporation in the stock of a bank which is then apparently in sound financial condition, but which thereafter goes into liquidation. Would equity impose the statutory liability upon the stockholders of the corporation, who were ignorant of the fact that the corporation owned the bank stock?

This question is not required to be decided in this case, and we think it had best be left to be decided, when the occasion comes, in the light of the facts of each case as it arises.

We come now to the consideration of the question which the learned Circuit Judge frankly says in his decree has given him more concern than any others involved in the case. He states the issue in this wise:

"In the instant case the ownership of bank stock by Palmetto Brokerage Company was illegal, null, and void and beyond the powers of the corporation. *Alderman v. Alderman* [178 S. C., 9, 181 S. E., 897, 105 A. L. R., 102], *supra*. It was '*ultra vires* and also something more.' The defendants, as stockholders of that company, engaged in a deliberate violation of the statute. Their acts were illegal. And, according to the authorities, whether or not they actually participated in, or had actual knowledge thereof, they are liable as an association of persons—as partners."

We do not think that the cases cited by the circuit decree sustain the view announced that the stockholders in the Palmetto Brokerage Company are liable as partners.

All of the cases so cited are, in principle, similar to the case of *Meyer v. Brunson et al.*, 104 S. C., 84, 88 S. E., 359, 360.

In that case certain persons filed with the Secretary of State a petition for a commission to organize a corporation for the purpose of conducting a mercantile business. They immediately opened books of subscription, and varying amounts of the capital stock were subscribed for, but

never for the full amount proposed, and varying amounts were paid in. Without waiting further, and before any charter was issued, they immediately began to conduct business, buying and selling merchandise. They became indebted to the plaintiffs, who began action against them, naming them partners. One of the defenses was that defendants were a *de facto* corporation. After the action was begun, they had proceeded with the organization of their company and obtained their charter of incorporation. On the trial, the Circuit Judge granted a motion for nonsuit, which order was reversed on appeal.. This Court said:

"And the question is: Did they follow the terms of the statute close enough to have constituted themselves a corporation *de facto* in 1912? For if they did not, then upon well-settled principles of law, so well established in this State as not to need a citation of authority, the defendants are individually liable to the plaintiffs."

And so they held.

But the instant case is not analogous to that. Here the corporation is complete in form. It has followed the requirements of the statute in perfecting its organization. If, perchance, it has used its corporate capacity to violate another statute of the State, to wit, to evade the liability of stockholders of the Peoples State Bank of South Carolina, the Court of Equity will disregard the corporate fiction and penetrate through the corporate entity for the purpose of ascertaining who are the true owners of the bank stock. We do not find in the *Meyer v. Brunson case* any authority for holding the true owners of the bank stock liable as partners. Rather, the intent and purpose would seem to be to ascertain the identity of the true owners of such stock in order that they may be held severally liable in proportion to the shares of such stock which they own. It is not the purpose of the law to penalize any one, but it is to compel the true owners of the bank stock to fulfill their contractual liability, fixed by the statute when they became owners of the bank stock.

We have examined many authorities on this subject, and have found none which satisfy us that a Court of Equity has power, *in a case similar to this, to hold the stockholders of such a holding corporation as Palmetto Brokerage Company jointly liable as partners.*

In the case of *Barbour v. Thomas,* 7 F. Supp., 271, 278 (D. C., Michigan, 1933), this is found: "Whenever the principal business of a corporation is to hold stock of this statutory liability class, and is without capital or other substantial assets to respond to the statutory liability, the corporation should be disregarded *and its stockholders held individually liable in proportion to the stock owned by them* as the true and beneficial owners of the stock." (Italics added.)

Perhaps it may be said that that statement was not necessary to the decision of that case, because the certificates of the corporation stock contained an agreement that each stockholder would be liable for the statutory liability imposed upon the holding company for ownership of shares of stock in a bank or trust company in proportion to the number of shares held by him in the holding company.

Nevertheless, the quoted statement is germane to the subject discussed in that case, and is a clear utterance of the reasonable and logical rule which this Court conceives to be the correct one to be applied by a Court of Equity, viz., that in such case the stockholders' liability is several and not joint.

In the case of *Chisholm v. Gilmer,* 81 F. (2d), 120 (C. C. A., 4th), this was said: In modern times Courts have in general leaned heavily against joint liability, and the same disposition underlies the statutes which have so generally changed the ancient doctrine.

See, also, the following cases: *Metropolitan Holding Company v. Snyder,* 79 F. (2d), 263, 103 A. L. R., 912 (C. C. A., 8th); *Harris Investment Co. v. Hood,* 123 Fla., 598, 167 So., 25.

The present case was decided on a demurrer. The record is incomplete and does not show the proportions in which the stock of the Palmetto Brokerage Company is held by the defendants. It seems, however, to be conceded that the assets of the Palmetto Brokerage Company consist solely of the 900 shares of the stock of the Peoples State Bank of South Carolina which were conveyed to it by Albert Sottile. The case must go back to the Circuit Court for the purpose of fixing the liability of each of the defendants, by ascertaining the proportion in which they own the stock of Palmetto Brokerage Company.

This Court is satisfied that their liability is several, not joint.

The judgment of the Circuit Court, as modified by this opinion, is affirmed.

MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.

MR. CHIEF JUSTICE STABLER concurs in result.