**PEARSON v. ALL BORG et al.**

No. 15530.

District Court, N. D. Illinois, E. D.

June 28, 1938.

838

Malato & Horrell, Isidore Goodman, and Theodore E. Rein, all of Chicago, Ill., for plaintiff.

Edward J. Warren, of Chicago, Ill., for defendant E. C. Cook.

Mayer, Meyer, Asutrian & Platt, of Chicago, Ill., for defendant David A. Noyes & Co.

Paden & Kropf, of Chicago, Ill., for defendant Edna Sturve.

McNab, Holmes & Long, of Chicago, Ill., for Thomas H. Hair.

Marshall & Marshall, of Chicago, Ill., for defendant Ben T. Wright.

Henry L. Graf, of Chicago, Ill., for defendant J. W. Morsbach.

Bullinger & Michels, of Chicago, Ill., for defendants Felix Rothchild and Achenbach.

John Taylor Booz, of Chicago, Ill., for defendant E. Klein.

Laff & Zimring, of Chicago, Ill., for defendant Nathan Moskowitz.

Thomas G. Vent, of Chicago, Ill., for defendant Leslie F. Muter.

George Gillette, of Chicago, Ill., for defendant Maurice J. Flynn.

HOLLY, District Judge.

The plaintiff is the receiver of the Peoples National Bank and Trust Company of Chicago (hereinafter referred to as Peoples National Bank), a national banking association. Defendants are stockholders of the National Republic Bancorporation (hereinafter referred to as Bancorporation).

Peoples National Bank was closed by resolution of its Board of Directors on or about June 20, 1932, and thereafter plaintiff was duly appointed as receiver of said Bank by the Comptroller of the Currency. The Comptroller on or about August 12, 1932, made an assessment upon the stockholders of Peoples National Bank in the amount of the par value of each share of said Bank. Bancorporation is a corporation organized under the laws of the State of Illinois with an authorized capital stock of twenty million dollars, consisting of one million shares of the par value of $20 each. Defendants are stockholders of said Bancorporation. Certain of the defendants in this proceeding received their shares in Bancorporation in exchange for shares of stock of Peoples National Bank, 39,415 shares out of a total of 50,000 shares outstanding of Peoples Bank having been transferred to Bancorporation by such defendants in exchange for shares of said stock of Bancorporation. The remaining outstanding shares of stock of Bancorporation were issued in exchange for the stock of certain other banks or were paid for in cash. It is averred in the complaint that Bancorporation owned a majority of the capital stock of seven other banks.

Article 10 of the By-laws of Bancorporation provided for the appointment by the Board of Directors of a management committee consisting of the officers of Bancorporation and one representative of each of the Banks affiliated with Bancorporation and, in the discretion of the Board of Directors, an additional representative of any of the affiliated banks of Bancorporation. It was provided that the Committee should advise with and aid the officers of Bancorporation in all matters concerning its interest and the management of its business.

It was further alleged in the bill that Bancorporation possessed a real estate committee which reviewed and passed upon real estate loans made and to be made by such "unit or member banks" and appointed, employed and retained an appraiser who was authorized to, and who did, appraise and approve loans and security therefor made and contemplated by said "unit or member banks"; that a central mortgage bureau was created in and by said Bancorporation which, among other things, allocated among the various member banks, applications for loans made to such individual member banks; said member banks made daily reports to Bancorporation as to the status of new, renewed and paid loans; that each member bank was required to file copies of its annual reports with the Secretary of Bancorporation, and periodical examinations of the affairs, assets, liabilities and condition of each of said member banks were made by Bancorporation; negotiations were conducted from time to time looking to the acquisition of a majority of the capital stock of additional banks by Bancorporation; that advertising campaigns were conducted advertising to the public the existence of the chain, group or system of banks affiliated with Bancorporation; an identical insignia, being a reproduction of a statue known as "The Republic" was placed upon the stationery of each of said banks and uniformly used; that supplies were jointly purchased and forms of bank documents adopted, including uniform styles of checks, notes, deposit tickets and numerous other forms; that a blanket surety bond in the sum of $500,000 upon all of the officers and employees of all of said unit banks was procured; that the payment of dividends upon the capital stock of said member banks and the amount of said dividends was determined, authorized and directed by Bancorporation; that said Bancorporation determined and designated the directors and officers of each of said member banks and in all other material respects said unit or member banks were operated as a chain, groups or system of banking institutions contrary to the letter, meaning, spirit and intent of the laws of

the United States of America and of the State of Illinois.

On or about April 15, 1933, an involuntary petition in bankruptcy against Bancorporation was filed in the District Court of the United States for the Northern District of Illinois, Eastern Division, and on or about May 16, 1933, said Bancorporation was adjudicated a bankrupt and said Bancorporation was on the date of adjudication and has ever since been hopelessly insolvent and unable to pay any amount whatsoever on account of the statutory liability imposed by law upon the holders of shares of capital stock of said Peoples National Bank. Plaintiff further avers that Bancorporation was intended to be and was a mere agency or instrumentality for enabling defendants to operate, dominate and control said Peoples National Bank and the other banks whose stock it held and that defendants actually operated, dominated and controlled said banks; that defendants elected directors of Bancorporation which appointed the Management Committee aforesaid which controlled and regulated the business and affairs of each of said banks and that defendants received dividends upon the stock held by Bancorporation which dividends were derived mainly from dividends paid to Bancorporation by said banks. The allegations concerning the control of member banks by Bancorporation are very largely mere conclusions of the pleader.

It is the contention of plaintiff that the stockholders of said Bancorporation are, in effect, the owners of 39,415 shares of Peoples National Bank standing nominally in the name of Bancorporation as aforesaid, that an accounting is necessary to determine the proportionate share of the aggregate liability for which each individual defendant is severally liable and that discovery is necessary in order to ascertain and determine who are the actual stockholders of Bancorporation and the nature and extent of the interest of each of them in said stock.

Plaintiff prays that an accounting may be ordered to determine the number of shares of stock of Bancorporation that were issued and outstanding at the date of the closing of said Peoples National Bank and for the purpose of determining the proportionate amount of the assessment levied by the Comptroller of the Currency for which each holder of stock of National Republic Bancorporation is liable, that "the corporate form name or fiction known and described as National Republic Bancorporation be set aside and disregarded and that defendants herein named be declared to be the true owner of 39,415 shares of the capital stock of Peoples National Bank and Trust Company of Chicago" and that a judgment be entered accordingly against each of the defendants.

Plaintiff's contentions as set forth in its brief are (1) the real or beneficial owner of stock in a banking corporation is liable for an assessment levied against such stock, though the legal title thereto may be in another, (2) the stockholders of Bancorporation are the beneficial owners of the stock of Peoples National Bank, the title to which was registered in Bancorporation, and (3) the real purpose of Bancorporation was illegal and contrary to the policy of the law and its stockholders are, therefore, personally liable to its creditors.

First. It is well settled that the real owner of shares of a banking corporation is liable for an assessment levied against the shares. Pauly v. State Loan & Trust Co., 165 U.S. 606, 17 S.Ct. 465, 41 L.Ed. 844, Ohio Valley National Bank v. Hulitt, Receiver, 204 U.S. 162, 27 S.Ct. 179, 51 L. Ed. 423.

Second. Are the stockholders of Bancorporation the real and beneficial owners of the thirty nine thousand odd shares of the Peoples National Bank. Plaintiff says yes, that where a corporation is organized for the purpose principally of holding the stock of banking institutions, or where its principal business is acquiring and holding such stocks, the court will disregard the corporate entity and hold its stockholders for the statutory liability imposed upon the holder of the stock of such banks.

The cases upon which plaintiff principally relies to maintain this position are Corker v. Soper, 5 Cir., 53 F.2d 190; Metropolitan Holding Co. v. Snyder, 8 Cir., 79 F.2d 263, 103 A.L.R. 912; Barbour v. Thomas, D.C., 7 F.Supp. 271; Fors v. Farrell, 271 Mich. 358, 260 N.W. 886; Nettles v. Sottile, 184 S.C. 1, 191 S.E. 796; Nettles v. Rhett, 4 Cir., 94 F.2d 42; and Laurent v. Anderson, 6 Cir., 70 F.2d 819.

In Corker v. Soper, supra, the holding company was created by the stockholder for the sole purpose of holding stock owned by his wife and other stock which he had paid for and which had been issued in the name of the corporation before it was or-

ganized. He received a dividend on the stock. The corporation issued its notes in payment for the stock, it had no assets other than the stock, it issued no stock certificates, kept no books and had no seal. The facts in that case are entirely different from those in the case at bar.

In Metropolitan Holding Co. v. Snyder, supra, the holding company was organized by the real owners of the stock at a time when the bank was in precarious financial condition for the sole purpose of holding the stock of such stockholders and, quite apparently, to enable them to escape personal liability. It had no other assets than these shares of stock, and the court found that it held the stock merely as agent for the beneficial owners.

The case of Barbour v. Thomas, supra, requires more extended consideration. There the holding company was organized by the officers and directors of a national bank and four state banks. The capital of the corporation was represented by 120 shares of no par stock, issued at $10 per share, and $50,000,000 of par value stock. The no par stock was subscribed for by the twelve executive officers of the five banks. No one could be a director of any of the banks unless he owned 10 shares of the no par stock. As the holding company acquired over 97% of the stock of each bank, the control of these banks was vested for five years in the holders of no par stock.

Before permitting the corporation to engage in business the securities commission of the State of Michigan required the insertion in the articles of incorporation a provision as follows: "Article IX A. The holder of each share of the common stock of this corporation shall be individually and severally liable for such stockholders ratable and proportionate part determined on the basis of their respective stockholdings of the total issued and outstanding stock of this corporation for any statutory liability, imposed upon the corporation by reason of its ownership of shares of the capital stock of any bank or trust company, and the stockholders of this corporation, by the acceptance of their certificates of stock of this corporation, severally agree that such liability may be enforced in the same manner as statutory liability may now or hereafter be enforceable against stockholders of banks or trust companies under the laws of the United States or the State of Michigan."

That clause was printed on each certificate of stock issued by the holding company.

Each of the five banks whose stock was held by the holding company became insolvent. In this suit the receiver of the national bank sought to hold the holders of the stock of the holding company for the assessment levied against the holders of the stock of the national bank. The court held that under the provisions of said Article IX the stockholders of the holding company were liable for the amount of the assessment. In his opinion Judge Hayes also discussed the question of the liability generally of the holder of stock in such a holding company, citing numerous authorities and quoting from the United States v. Reading Co., 253 U.S. 26, 62, 40 S.Ct. 425, 64 L.Ed. 760, where the court said (page 277 of 7 F.Supp.): " * * * Where such ownership of stock [ownership by one corporation of the stock of another] is resorted to, not for the purpose of participating in the affairs of the corporation in which it is held in a manner normal and usual with stockholders, but for the purpose of making it a mere agent, or instrumentality or department of another company, the courts will look through the forms to the realities of the relation between the companies as if the corporate agency did not exist and will deal with them as the justice of the case may require."

In another part of his opinion Judge Hayes said (page 278 of 7 F.Supp.): "Whenever the principal business of a corporation is to hold stock of this statutory liability class *and is without capital or other substantial assets to respond to the statutory liability,* the corporation should be disregarded and its stockholders held individually liable in proportion to the stock owned by them as the true and beneficial owners of the stock. It functions as a mere agency for the stockholders." (Italics mine.)

In Fors v. Farrell, supra, where a trustee held stock in an insolvent bank in trust for the stockholders of another bank, the stock of the latter bank being held by a holding company, the dividends on the stock of the insolvent bank having been received by the holding company and there being such an intricate relationship between the insolvent bank and the holding company that the holding company practically controlled the affairs of the insolvent bank,

the court held (two justices dissenting) that the holding company should be held to be the real and beneficial owner of the stock. There was no attempt in this case to hold the stockholders of the holding company.

In Nettles v. Sottile, supra, the court found that the owner of certain bank stock transferred his stock to a corporation at a time when the bank's condition was not sound for the purpose of evading his liability, and held that the corporation held the stock as agent merely of the real owner. The judge of the lower court in which the case was tried had said in his opinion, in effect, that in every case where the title to bank stock was transferred to a corporation the transferror would be held for an assessment levied against the stock. The Supreme Court took occasion in its opinion to say that the court was not committed to such doctrine and the case did not require it to pass upon that question.

In Laurent. v. Anderson, supra, a trust agreement had been entered into under the terms of which certain of the stockholders of two Louisville, Kentucky, banks had deposited their stock with trustees, receiving in exchange participation certificates showing their respective interests in the trust. The trustees were given broad powers as to the control of the stocks, and the right to vote the stock at meetings of the stockholders, except that it was provided in the trust agreement that any holder of a participation certificate might, by written notice, direct the trustees "how they shall vote in the corporate meetings such proportionate number of shares therein owned by the Trustees as the number of shares represented by the Trustees' Participation Certificate owned by such person giving such directions may bear to the total number of shares represented by outstanding Trustees' Participation Certificates and the Trustees shall vote such proportion of stock in accordance with such instructions." (70 F. 2d 821.) Banco Kentucky Corporation had become the owner of 95% of these certificates and upon the insolvency and closing of one of the said Louisville banks, a national banking institution, the receiver commenced his action against Banco Kentucky Corporation to recover the statutory stockholders liability.

As the court said in its opinion, the absolute powers of the trustees was very limited and the beneficial ownership of the stock was in the Banco Kentucky Corporation. The participation certificates reserved to it, and it could exercise, all of the powers of control which vested in the ownership of the stock.

In Nettles v. Rhett, 4 Cir., 94 F.2d 42, it appeared that the holding company had no other property than the stock of the insolvent bank.

One of the principal purposes of a corporation as distinguished from a partnership is to avoid individual responsibility for the debts of the enterprise. Holmes, J., in Donnell v. Herring-Hall-Marvin Safe Co., 208 U.S. 267, 28 S.Ct. 288, 52 L.Ed. 481. It is the contention of plaintiff that this rule does not apply to holding companies whose assets consist principally of national bank stocks, or stocks of national and other banking institutions. I do not think that the courts, in the cases above noted, nor in other cases cited by counsel for plaintiff, so hold. Whether the shareholders of the holding company shall be held responsible for an assessment levied upon bank stocks standing in the name of the corporation depends upon the circumstances of the particular case. It will be conceded, I presume, that stockholders of the United States Steel Corporation would not be liable for an assessment levied against the holders of stock in an insolvent bank, some of the stock of which happened to be held by that corporation. On the other hand, if it appeared that the holding company was organized for the purpose of enabling holders of the capital stock of a bank or banks to evade liability for an assessment, the courts would not permit the stockholders to escape their statutory liability by such a device. If a holding company was organized and continued to do business with no other assets than bank stocks, even though there had been no intent in the beginning to evade liability, I think, though such a case does not yet appear in the books, that the courts would hold the stockholders liable, for otherwise the creditors of an insolvent bank would lose the protection which the legislature had intended to give.

Public policy in this regard seems to me to be reflected in the provisions of the Banking Act of 1933. Section 2 of that act (U.S.C.A., Title 12, Sec. 221a) recognizes, and by implication, authorizes, the formation of holding companies, and permits the ownership by such a company of a majority of the stock of a bank which is a member

of the Federal Reserve System. The same act, Sec. 19 (U.S.C.A., Title 12, Sec. 61), expressly authorizes the Federal Reserve Board, in its discretion, and under certain regulations, to grant permission to a holding company to vote the stock of a bank controlled by it at any or all meetings of shareholders of the bank. Such holding company is obliged to submit to examination of its affairs, and after June 16, 1933, every such holding company, the provisions of whose charter does not preserve the individual liability of its stockholders for all statutory liability imposed on the holding company by reason of its control of shares of stock of banks, is required to possess, during the life of its voting permit, free and clear of all liens, readily marketable assets other than bank stocks, in an amount not less than 12 per centum of all bank stocks controlled. This amount must be increased by not less than 2 per centum per annum of such aggregate value until such assets shall amount to 25 per centum of the aggregate par value of such bank stock. The holding company must also reinvest in readily marketable assets, other than bank stocks, all net earnings over and above 6 per centum per annum on the book value of its own shares outstanding until such assets shall amount to 25 per centum of the aggregate par value of all bank stocks owned or controlled by it. Holding companies whose charters preserve the statutory liability of its stockholders for assessment on bank stocks held by it are required to set up a lesser reserve.

This Act was passed subsequent to the levy of the assessment on the stockholders of the Peoples National Bank, and the insolvency and bankruptcy of Bancorporation, but it expresses a public policy, which, it seems to me, should govern the court in this proceeding. It is not necessary for me to decide now what the court should hold in case it is shown that Bancorporation had no substantial assets other than bank stocks, but as it does not appear from any averments of fact in the complaint that the group of stockholders of Peoples National Bank transferred their stock to Bancorporation for the purpose of evading liability upon bank shares, nor that Bancorporation was without substantial assets other than bank stocks, I do not feel I should "pierce the corporate veil" and hold the stockholders of Bancorporation each individually liable, in the proportion which his stock bears to the total outstanding stock of the corporation, for the assessment levied by the Comptroller on the shares of Peoples National Bank held by Bancorporation.

It may be said that the complaint does state that substantially all of the assets of Bancorporation were shares of banking corporations. That is true. The complaint does so state, but the statement is a mere conclusion of the pleader. No facts are set forth from which the court can determine whether "substantially" all of the assets were bank shares. Plaintiff does charge generally that the officers dominated and controlled the affairs of the banks whose stock it owned, averments intended to bring this case within the rules as to liability laid down in the Barbour Case, supra, but it is not shown that either the charter or by-laws of the corporation authorize the officers of Bancorporation to exercise such control over the banks, or that the stockholders of Bancorporation knew that such control was intended or exercised. What the charter powers of the corporation were plaintiff does not inform us. The provisions of the by-laws authorize only friendly aid and advice by the Committee and such service as is usually rendered by a holding company to its subsidiaries. Neither the officers of Bancorporation nor the management committee is authorized to dominate or control the banks, stock of which was owned by Bancorporation. If control was exercised by the officers of Bancorporation, plaintiff does not charge that the stockholders had knowledge of that fact and I do not feel that the stockholders of Bancorporation should have the liability of this assessment imposed upon them for the fault of the officers in exercising unauthorized powers. This subject will be discussed more at length in a latter portion of this opinion.

If it appeared from the complaint that the shareholders of Peoples National Bank had transferred their stock to Bancorporation for the purpose of evading their statutory liability, if Bancorporation had no other assets than the stock of Peoples National Bank, if it appeared from facts stated in the complaint that Bancorporation was holding the stock merely as agent or trustee, if the dividends on Peoples National Bank stock when received by Bancorporation were distributed to the assignors of that stock, then, in my opinion, the assignors of the stock to Bancorporation might be held liable for the assessment against the holders of the stock which had been held by them respectively. But none

of these facts appear, and I feel constrained to hold that they are not liable for the assessment plaintiff seeks to enforce.

Third. It is further urged by plaintiff that the "real purpose of Bancorporation was to illegally effect and create a group or system of banking institutions in violation of the laws of the United States and of the State of Illinois," and that "the real purpose of Bancorporation being illegal and contrary to the policy of the law, its stockholders are personally liable to its creditors."

It is true that the laws of Illinois, Ill. Rev.Stat.1937, c. 16½, § 9, prohibit "branch" or "chain" banking, and the national government, 12 U.S.C.A. § 36, denies to national banks the privilege of establishing branches in any state whose laws deny that privilege to state banking institutions. But it does not appear that the charter powers of Bancorporation were unlawful or such as it might not properly exercise under the laws of the State of Illinois. Its by-laws authorized no illegal practices. If its officers illegally used the corporation to evade the law and to establish what was in effect a group or chain of banks the stockholders had no knowledge of such unlawful conduct, so far as is shown by the bill. Counsel have cited no cases, and I have found none which holds that stockholders of a corporation organized for a lawful purpose are personally liable to its creditors because, simply, the officers of the corporation, without knowledge of the stockholders, have caused the corporation to engage in unlawful operations. In each of the cases cited by plaintiff the organization of the corporation was for a purpose not permitted by law, or the corporation, with the knowledge and acquiescence of its stockholders, abandoned the business for which it was ostensibly created and engaged in some business forbidden to it. Those authorities are not in point here.

Other questions have been raised, but I do not think it necessary to pass upon any but one of these. Defendants urge that this is not a proper case for equity jurisdiction, but that plaintiff should proceed in an action at law. With this contention I do not agree. Bailey v. Tillinghast, 6 Cir., 99 F. 801; Alsop v. Conway, 6 Cir., 188 F. 568; Wyman v. Bowman et al., 8 Cir., 127 F. 257. The case of Hale v. Allinson, 188 U.S. 56, 23 S.Ct. 244, 47 L.Ed. 380, cited by defendants does not seem to me to apply to a situation such as we have here.

For the reasons expressed above I am of the opinion that the complaint does not state a cause of action against the defendants and should be dismissed.