## DIXON v. DIAL.
### No. 4138.

District Court, E. D. South Carolina, Columbia Division.

Aug. 3, 1938.

Donald Russell, of Spartanburg, S. C., and R. Beverley Sloan, of Columbia, S. C., for complainant.

Melton & Belser, of Columbia, S. C., for defendant.

MYERS, District Judge.

By a motion filed under Section 470 of the South Carolina Code of Civil Procedure (1932), the plaintiff herein has moved to strike the answer filed by the defendant as sham and irrelevant and in the event such motion is granted for judgment against the defendant in accordance with the practice sanctioned in Interstate Chemical Corporation v. Farmington Corporation, 100 S.C. 196, 84 S.E. 710. The motion was heard before me upon the verified pleadings in the cause and upon an affidavit of the plaintiff to which are annexed certain exhibits.

From the record before me, it appears that the plaintiff by this suit seeks to recover of the defendant for a stock assessment levied by the Comptroller of the Currency against one hundred ten (110) shares, par value one hundred ($100) Dollars each, of the capital stock of The National Loan & Exchange Bank of Columbia, South Carolina, a national banking association. Upon the hearing before me it was conceded by the parties that the National Loan & Exchange Bank of Columbia, South Carolina, was a national banking association, and was taken over by the Comptroller of the Currency on March 4, 1933; that the plaintiff was the Receiver thereof under appointment of the Comptroller of the Currency; that heretofore the Comptroller of the Currency levied a one hundred per cent. assessment against the stock of said bank, payable on or before December 21st, 1933, and if not paid on that date, to carry interest at the legal rate. While the answer of the defendant purported to set forth several grounds of defense, the defendant at the hearing apparently recognized that all but one were held sham and irrelevant and predicated its opposition to plaintiff's motion upon one defense, to-wit: That on June 12, 1932, about eight months before the suspension of The National Loan & Exchange Bank of Columbia, South Carolina, the defendant had transferred on the books of the bank his stock to the Acme Securities Corporation, a corporation chartered under the general laws of South Carolina, in whose name such stock remained registered on March 4, 1933. Unless defendant's transfer to this corporation operates to relieve him of liability for any subsequent assessment levied against the bank stock formerly registered for many years on the books of the bank in his name, the defendant would be liable to the assessment under the position taken by him before this Court. And since this defense is purely legal, based upon undisputed facts, it seemed conceded by the parties that the cause could be properly disposed of upon this motion.

That defendant's transfer of his stock to the Acme Securities Corporation—the only defense urged by him upon this Court —would not relieve him but, on the contrary, continued his liability to the assessment seems clear under the authorities. The National Bank Act contemplated the existence at all times of one legally, though not necessarily financially, able to respond to any stockholders' assessment levied against stock in a national bank. For this reason, it was repeatedly held that a transfer of national bank stock, in order to relieve the transferor of any subsequent assessment thereon, had to be made to one legally capable of assuming the superadded liability attaching to the ownership of such bank stock, 12 U.S.C.A. § 64. Speaking to this point, the Court in Aldrich v. Bingham, D.C.N.Y.1904, 131 F. 363, 364, aptly remarked:

"It is a well-established rule of law that a transfer of stock in a corporation must be made to a person or corporation not only legally capable of holding the stock transferred, but also to one who is legally bound to respond when assessments are made upon the stock, and who may lawfully assume the liabilities of the transferror in relation thereto. It need not necessarily have been transferred to a person who is responsible in the sense that he will be able to financially meet the liabilities imposed upon a stockholder, but it is essential that he shall be legally liable to assume such obligations, and not be at liberty to repudiate them."

In Pottorff v. Dean, D.C.Mass.1934, 8 F.Supp. 670, 672, the Court said: "The correct rule established by the cases undoubtedly is that there shall at all times be a holder of sufficient legal capacity to assent to the statutory liability and one who has so assented".

In Nettles v. Rhett, 4 Cir., 1938, 94 F. 2d 42, 47, our own Court of Appeals, speaking to the bank stockholders' liability imposed under the laws of South Carolina but employing reasoning equally applicable to a liability created under the National Bank Act, said, quoting from Conner v. McSween, 1931, 164 S.C. 438, 162 S.E. 434: "It is self-evident that, the statutory liabil-

ity [levied against stockholders of local banks] being contractual, a stockholder cannot divest himself of it by a transfer of his stock to one who is legally incapable of assuming it; otherwise the supposed protection to depositors would be a myth, as judicious transfers of the stock would practically obliterate the liability".

Again, in Riley v. Bondi, 8 Cir., 1933, 64 F.2d 515, 517, the Court summed it up: "The National Bank Act, Rev.St. § 5151 (12 U.S.C.A. § 63) contemplates that on every share of stock held in a national bank some one shall be legally liable for assessment. Where stock is held in the name of an infant, this person will normally be his transferror, since as regards the liability for assessment the transfer necessarily remains incomplete".

This rule has found most frequent application in transfers of bank stock to minors. Without exception, the Courts have held that the transferor of bank stock to a minor does not thereby relieve himself of the subsequent assessment since the minor is without the legal capacity to assume the assessment. Seabury v. Green, 1935, 294 U.S. 165, 55 S.Ct. 373, 79 L.Ed. 834, 96 A. L.R. 1463, reversing 173 S.C. 235, 175 S.E. 639; Early v. Richardson, 1930, 280 U.S. 496, 50 S.Ct. 176, 74 L.Ed. 575, 69 A.L.R. 658; Miller v. Van Zandt, 5 Cir., 1934, 67 F.2d 901; Pottorff v. Dean, 1 Cir., 1935, 77 F.2d 893; Lifsey v. Bullock, D.C.N.C. 1936, 11 F.Supp. 728.

■ Likewise a transfer of bank stock to the bank itself, though made in good faith and while the bank is in sound financial condition, will not relieve the transferor. Barth v. Pock, 1915, 51 Mont. 418, 155 P. 282; Atlanta & W. Butter & Cheese Ass'n v. Smith, 1909, 141 Wis. 377, 123 N.W. 106, 32 L.R.A.,N.S., 137, 135 Am.St.Rep. 42; Re Reciprocity Bank, 1860, 22 N.Y. 9. In the last cited case, the Court said that it was quite evident that a transfer or surrender to the institution itself which issued the stock did not exonerate the person making the transfer; that the purchaser from whom must be one who succeeds to a personal liability distinct and in addition to the liability of the corporation (in this instance a state bank), and that the corporation could not be such a purchaser.

■ Even more than a minor is a private corporation of South Carolina legally incapable of purchasing bank stock. Subdivision (5) of Section 7677 of the Civil Code of this state (1932), originally enacted in 1886 (19 St. at Large S.C. p. 546), provides that, "No part of the capital stock or any of the funds of such corporation shall, at any time during the continuance of their charter, be used or employed, directly or indirectly, in banking operations". Such statute has been uniformly construed as inhibiting the investment by a private corporation of this State of any of its funds in bank stock. White v. Commercial & Farmers' Bank, 1902, 66 S.C. 491, 45 S.E. 94, 97 Am.St.Rep. 803; Alderman v. Alderman, 1935, 178 S.C. 9, 181 S.E. 897, 105 A.L.R. 102; Nettles v. Sottile, 1937, 184 S.C. 1, 32, 191 S.E. 796; Nettles v. Rhett, D.C.S.C. 1937, 20 F.Supp. 48, 51; Id., 4 Cir., 1938, 94 F.2d 42, 46. In Nettles v. Sottile, supra, the latest expression of the South Carolina court on this statute, the Court pointedly ruled (page 32, 191 S.E. page 801): "The ownership of bank shares by a private corporation in South Carolina is not valid, and legal, * * * but, on the contrary, is illegal and void". In commenting upon the South Carolina cases construing such section, Judge Soper in Nettles v. Rhett, supra, said (page 46):

"The prohibition contained in section 7677, subdivision 5, of the South Carolina Code of 1932, is pertinent to this case. It provides that no part of the capital stock or any of the funds of a corporation formed under the general laws of South Carolina shall be used or employed directly or indirectly in banking operations. The Supreme Court of South Carolina in applying this statute has held that the acquisition of bank stock by an ordinary business corporation is an ultra vires act which the board of directors can neither authorize nor ratify; and, although in South Carolina a corporation cannot avail itself of the defense of ultra vires in a suit on a contract performed by the other party which does not involve moral turpitude or offend any express statute, yet, when the contract is prohibited by statute, it cannot be made the foundation for a liability of the corporation and the court will leave the parties where it finds them".

■■ The defendant argues, though, that, since the Acme Securities Corporation was organized under the general law and was vested with the power to acquire "shares of stock in other corporations" by Section 7745 of the Civil Code (1932), the Acme Securities Corporation could validly own bank stock, irrespective of the prohibition

created under Section 7677. In construing the powers of corporations of this State, Sections 7745 and 7677 must be read together and harmonized; under such a rule, Section 7677 creates a special limitation upon the general corporate powers enumerated in Section 7745 and effectively interdicts the purchase by South Carolina corporations of bank stock. That such is the proper construction of the two sections is conclusively illustrated by both Nettles v. Sottile, supra, and Nettles v. Rhett, supra. In each of the cited cases, the corporation acquiring the bank stock was organized under the general laws of this State and had their corporate powers platted by Section 7745; nonetheless, the Court said that the purchase of bank stock by either corporation was "illegal and void".

It is the contention of the defendant that while a local corporation of South Carolina is inhibited from purchasing and owning stock in a state bank under subdivision (5) of Section 7677, such prohibition does not extend to the purchase and ownership of stock in a national bank. The statute itself offers no basis for this distinction. It marks out no distinction between state or national banks, but broadly prohibits the use by corporations, organized under the general laws of South Carolina of any of their capital either directly or indirectly in banking operations. As stated in Alderman v. Alderman, 1935, 178 S.C. 9, 32, 181 S.E. 897, 105 A.L.R. 102, this statute "is a strict prohibition", and in the case cited was extended to cover the ownership of stock in a national bank located without the State of South Carolina, a conclusive answer against this argument of the defendant. Further, that such inhibition is not thus to be narrowly limited is indicated by Reconstruction Finance Corporation v. Rawlings, 5 Cir., 1935, 76 F.2d 566, 98 A.L.R. 642, in which the Court held that a legislative proscription against the ownership by a Louisiana bank of stock in another bank prohibited the ownership by such Louisiana bank of stock in a national bank.

Since it is recognized by the defendant that his defense in this case must rest entirely upon the transfer purportedly made by him to the Acme Securities Corporation, and since such transfer did not operate to relieve him of the subsequent assessment levied against the stock transferred by him to that corporation, it necessarily follows that even under the contention advanced by the defendant before this Court, the defendant is liable to the assessment and it will be in keeping with the prompt and expedient administration of justice that the plaintiff be given judgment against the defendant in accordance with the prayer of his motion and that plaintiff's motion to strike defendant's answer as sham and irrelevant be granted. Ocean-Forest Co. v. Woodside, 1937, 184 S.C. 428, 192 S.E. 413. Let the plaintiff submit an order for judgment in his favor in conformity with the foregoing opinion.

And it is so ordered.