### NETTLES v. RHETT et al.
#### No. 747.

District Court, E. D. South Carolina.
Aug. 11, 1938.

Eugene S. Blease, of Newberry, S. C., John I. Cosgrove, of Charleston, S. C., and Stephen Nettles, of Greenville, S. C., for plaintiff.

Mitchell & Horlbeck, of Charleston, S. C., for defendants Eastwood and others.

MYERS, District Judge.

On a former hearing in this proceeding, defendants then before the court were held liable proportionately for the added liability to depositors in Peoples State Bank, a banking corporation of the state of South Carolina, on stock issued to Peoples Investment Company, and standing on the books of the bank in the name of the Investment Company when the bank closed December 31, 1931, by reason of insolvency. The Investment Company, chartered by the state of South Carolina to do a general investment business in the buying and selling of stocks in other corporations, was shown to have been organized by the officers and directors of the bank for the purpose of promoting the financing of the pending expansion of the bank's interests by purchasing other state banks, and to have had no other assets than stock in Peoples State Bank at the time of its failure. The answering defendants there, being other than officers and directors of the bank, denied knowledge of the use and purpose of Investment Company as well as liability on the assessment, on the ground that lack of knowledge of the investment of the corporation's assets in bank stock precluded the contractual relation necessary to be shown under the South Carolina law in order to establish the liability to depositors. No evidence was offered by defendants, some of whom were shown at about the time of their subscription to Investment Company stock to have sold to Peoples Bank, others to have transferred to the bank as consideration in whole or in part for the corporation stock issued to them, stock in other state banks subsequently merged with Peoples State Bank.

Knowledge of the purpose of the formation and use of the corporation was imputed to all, and all were held liable on the apparent theory of attempt to evade the constitutional and statutory provisions of the South Carolina law in fraud of depositors. See Nettles v. Rhett, 94 F.2d 42.

The matter now before the court is the effort to enforce the proportionate liability against the defendant stockholders of Investment Company served with process subsequent to the former hearing, to wit: Albert Eastwood, S. W. Childs, Florence Staunton Thomson and Anne D. Thorne.

These defendants held preferred stock of Investment Company, deny by answer that they knew of its primary purpose to hold stock of the bank and assist in its expansion efforts, and have each one testified on this hearing that they were induced by a feeling of interest in the expansion of general industrial and marketing activity in the lower section of South Carolina to subscribe to the stock of Investment Company upon assurance of its official organizers that it had that purpose and that purpose alone in view, without which assurance they would not have made the investment. They further testify that they subscribed to preferred stock, not with the thought of avoidance of pecuniary liability, but because as preferred stockholders they were relieved of active participation in the conduct and management of the corporation which, as non-residents, they did not wish to assume. The deposition of Mrs. Thomson is that, before accepting the stock subscribed for and given to her by her husband, she asked and was assured that ownership of the stock would not involve her in any banking liability. Mrs. Thorne testified that the investment was made for her by her husband without information or investigation on her part. Mr. Thorne says, that before he subscribed for the stock issued to Mrs. Thorne, he was informed that the corporation's purpose was to invest in local industries generally, and that he would not have made the investment if there had been any indication of or reason to suspect investment of the capital in bank stock.

The question presented in this phase of the proceeding is whether the added liability falling upon holders of stock in a South Carolina state bank can be made to apply to stockholders in a South Carolina corporation upon the uncontroverted showing by such corporate stockholders that

they specifically and upon inquiry refused to assume any liability or responsibility for use of the assets of the corporation subscribed to and paid in by them for any other than general lawful industrial investments.

If there is any difference in the federal rule that an assessment levied on stockholders in an insolvent national bank must be met by the true and beneficial owner of the stock and the rule governing the attaching of the added liability to stockholders in stock of a state bank under the South Carolina law, it is because the state law has always been that, in order to attach, a contractual liability must be shown. Can one be held to have assumed a contractual relation on the ground that it may be imputed to him as a matter of public policy? The South Carolina courts have not so held, and the initial problem of this court is presented by the Circuit Court opinion in Nettles v. Rhett, supra. There the stockholders relied upon the theory that in order to establish the contractual relation to them as stockholders of a corporation holding bank stock illegally, this knowledge of such illegal holding and fraudulent purpose must be established. On the contrary, the court held that lack of knowledge could not be presumed in the absence of a proper showing. Does the court, having expressed a lack of surprise that no such showing was attempted by the corporate stockholders then before the court, intend to go further and say that if shown it would not have been a bar to recovery of the liability? If so, and I must confess that the language of the Circuit Court decision in its ordinary meaning would so indicate, it would be useless for this court to go further in attempting to present its conception of the applied and decided questions there with relation to the laws of South Carolina.

In Nettles v. Sottile, 184 S.C. 1, 191 S. E. 796, the South Carolina Supreme Court determined that the corporation, Palmetto Brokerage Company, was formed to hold stock in Peoples State Bank fraudulently and illegally transferred to it by Sottile for the purpose of avoiding personal liability for the assessment. The pleadings did not present, nor did the court consider, the principle that no valid legal transfer of the bank stock by Sottile to one capable of assuming the liability having been effected, the liability was never divested, but, conforming to the receivers' action as laid against the holding company stockholders, held them in proportion to their holdings on a finding of knowledge of and participation in the fraudulent purpose. A very different situation existed in Nettles v. Rhett, supra, where the holders of Investment Company stock then before the court were held liable in proportion to their stock. There the stock was issued directly by the bank to the holding company, and the finding that transfers of stock in other banks by some of Investment Company stockholders to Peoples State Bank as a part of or at about the time of their subscription to Investment Company stock, was held to negative the idea of lack of knowledge as well as to indicate participation in the unlawful scheme and purpose.

In neither of these cases was there directly before the court the question of liability of innocent stockholders, who had refused to invest in any sort of banking venture, but had invested in stock of a corporation chartered for general investment purposes and only upon assurance that the assets of the corporation would be used for that purpose as distinguished from banking ventures.

Not having just this question before them, I am constrained to think that both courts would welcome an opportunity to review expressions intimating a conclusion which, in my opinion, applied to the circumstances of the present defendants, would be neither just nor equitable.

Consider the South Carolina case. The Supreme Court cites with approval the finding of the court below that ownership of bank shares by a private corporation in South Carolina is illegal and void. Nettles v. Sottile, 184 S.C. 1, at page 32, 191 S.E. 796, at page 801:

"'A court of equity, therefore, will look through the corporate entity of the corporation to the real owners of the bank shares, to wit, its stockholders, and assess against them the liability attaching to the ownership thereof.'

"If this language be confined in its application to this case alone, there is no question of its pertinency; nor is there a doubt that it is a sound proposition of law in its proper application. The circuit court has reached the conclusion, and we concur in it, that the Palmetto Brokerage Company was organized as a holding company and that the 900 shares of the stock of the Peoples State Bank of South Carolina held by Albert Sottile were assigned

to the said Palmetto Brokerage Company for the purpose of evading the statutory liability attaching to such ownership. So far so good.

"But in the treatment of this issue the circuit judge has made certain pronouncements of law which to us seem to be too broad in principle, and which seem not to be necessary to the determination of this case.

"Let it be borne in mind that this court approves the rule declared by the circuit court, to wit: 'Where the corporate form of organization is adopted or a corporate entity is asserted *in an endeavor to evade a statute or to modify its intent,* courts will disregard the corporation or its entity and look to the substance or reality of the matter.' (Italics added.)

"But the circuit decree states this: 'The use of the corporate entity for the purpose of holding bank stock is a development of comparatively recent origin. As a matter of fact, I have been cited to no cases involving a corporation used as a holding company for bank stock prior to the debacle of 1929. In every considered case, however, in which this question has been raised, the courts have not hesitated to disregard the corporate identity, *regardless of the particular plan or schedule in use,* and attach the liability to the true owners of the bank shares.' (Italics added.)

"If, by the words we have italicized above, the circuit court meant to limit its language to cases in which a corporation has held the stock as a 'plan or scheme' to evade liability, or perpetrate a fraud, with such application we have no fault to find; but, if it is intended to say that in every instance in which a private corporation in this state has bought bank stock as an investment the stockholders may be held individually liable for the stock, we think the proposition is too broad, and is not necessary to be declared in this case in which there is no doubt of the fact that the Palmetto Brokerage Company was created as a holding company of the 900 shares of the stock of Peoples State Bank of South Carolina, and that this stock was assigned to it by Albert Sottile for the purpose of evading the statutory liability about to attach to it."

Proceeding, the court refuses to consider, as not necessary to be decided in the case, the question of whether equity would impose a statutory liability on stockholders of a private corporation already existing and doing a lawful business,—such stockholders being ignorant of the bank stock investment. The court says: (page 35, 191 S.E. page 810)

"It is not the purpose of the law to penalize any one, but it is to compel the true owners of the bank stock to fulfill their *contractual* liability, fixed by the statute when they became owners of the bank stock." (Italics added)

Clearly the approval of the principle that where the corporate form of organization is adopted or a *corporate entity is asserted* in an effort to evade the statute or modify its intent, courts will disregard the corporation or its entity and look to the substance or reality of the matter, and its further apparent approval of the principle that in any case the courts will not hesitate to disregard the corporate entity, regardless of the particular plan or schedule in use, and attach the liability to the true owners of the stock, should be considered in the light of the further limited application of these two principles by the court to the particular case under consideration, involving an attempted transfer of stock by an individual to the corporation "for the purpose of evading the statutory liability about to attach to it."

 The South Carolina law established in the Sottile Case germane to the matter here presented amounted to this:

Holding of bank stock by a private corporation is proscribed by statute and is illegal.

Stockholders in a corporation organized to hold bank stock transferred to it with intent to evade the liability of the transferror, having knowledge of the unlawful purpose, are held for the stock liability in proportion to their corporate stock.

In all proceedings against corporate stockholders for the statutory liability on bank stock held by the corporation, the corporation will be disregarded and the courts will look to the *substance or reality of the matter.*

The Fourth Circuit opinion in Nettles v. Rhett, supra, comments upon the refusal of the South Carolina Supreme Court in Nettles v. Sottile to fasten liability upon a stockholder of a holding company ignorant of the fact that the corporation has bank stock among its assets and says it is not essential to the case to so hold, citing Keyser v. Hitz, 133 U.S. 138, 10 S.Ct. 290,

33 L.Ed. 531, on page 48 of 94 F.2d, to the effect that "a transfer of bank stock to a person without his knowledge does not of itself impose upon him the liability attached by law to the position of a stockholder."

Reference to Keyser v. Hitz, cited supra, develops that the court was there considering alleged confirmation by the defendant of the unauthorized transfer to her of bank stock standing in her name at the time of the failure of the bank. The court says at page 149, 10 S.Ct. at page 294:

"If the transfers were, in fact, without her knowledge and consent, *and she was not informed of what was so done*— nothing more appearing—she would not be held to have assumed or incurred liability for the debts, contracts, and engagements of the bank."

(Page 148, 10 S.Ct. at page 294) "If she became aware of the transfers after they were made, and *thereafter* received the dividends, she became a shareholder for all purposes of individual liability." (Italics added.)

Early v. Richardson, 280 U.S. 496, 499, 50 S.Ct. 176, 74 L.Ed. 575, 69 A.L.R. 658, cited in Nettles v. Rhett, 94 F.2d at page 48, 94 F.2d 42 follows Keyser v. Hitz to the effect that assent is necessary to becoming a shareholder. Both cases had under consideration the liability under the national banking laws.

White v. Bank, 66 S.C. 491, 45 S.E. 94, 97 Am.St.Rep. 803, is cited in the Circuit Court opinion as "specifically [holding] that a real estate and loan company was not liable to the creditors [depositors alone is the South Carolina statutory provision] of a bank for an assessment on shares of the bank's stock which it had purchased and on which it had collected dividends" on the ground that "When the contract is prohibited by statute it cannot be made the foundation for a liability."

Alderman v. Alderman, 178 S.C. 9, 181 S.E. 897, 105 A.L.R. 102, followed, refusing to hold trustees personally liable for illegal investments in bank stock.

Conner v. McSween, 164 S.C. 438, 162 S.E. 434, is also cited as supporting the conclusion of the court in connection with the observation, "The holding company being relieved of liability by the prohibitory statute, and its shareholders being relieved because the bank stock was not held in their names, neither holding company nor stockholders could be compelled to respond to the receiver's demands, and the purpose of the Constitution and of the statute would be effectually evaded. This result is impossible * * *."

It is evident, however, from that portion of the opinion in Conner v. McSween, that the court there was dealing with a question of the ineffectiveness, so far as the liability under the statute is concerned, of a transfer of bank stock to one legally incapable of assuming it:

"It is self-evident that, the statutory liability being contractual, a stockholder cannot divest himself of it by a transfer of his stock to one who is legally incapable of assuming it; otherwise the supposed protection to depositors would be a myth, as judicious transfers of the stock would practically obliterate the liability."

The Circuit Court opinion also says (page 46 of 94 F.2d):

"It is suggested that the reason for section 7677 may be found in the fact that in South Carolina a different degree of responsibility is required of shareholders of state banks, that is to say, the extra liability, and that it would nullify this constitutional requirement if business corporations were permitted to engage in banking."

■ Section 7677, Civil Code of S.C.1932, prohibits the use of any part of the bank stock or funds of a South Carolina corporation, directly or indirectly, in banking operations; and this, insofar as it has been considered by the South Carolina courts, is looked upon as a provision for the protection of the bank depositors who are the only beneficiaries of the added liability fund. It has not been necessary, and the South Carolina courts have not considered the idea suggested, that this prohibitory statute was passed, not only for the protection of depositors in a bank, but for the protection of the stockholders of the corporation; except insofar as the result in White v. Bank, supra, and Alderman v. Alderman, supra, results as protection on the one hand of the stockholders of the corporation and on the other of the beneficiaries of the trust. As was said, however, in McCormick v. Market National Bank, 165 U.S. 538, 549, 17 S.Ct. 433, 436, 41 L.Ed. 817:

"The doctrine of *ultra vires*, by which a contract made by a corporation beyond the scope of its corporate powers is unlawful and void, and will not support an action,

rests, as this court has often recognized and affirmed, upon three distinct grounds: The obligation of any one contracting with a corporation to take notice of the legal limits of its powers; *the interest of the stockholders, not to be subject to risks which they have never undertaken;* and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law. Pearce v. Madison & Indianapolis Railroad, 21 How. 441 [16 L.Ed. 184]; Pittsburgh, Chicago, &c. Railway v. Keokuk & Hamilton Bridge Co., 131 U.S. 371, 384, 9 S. Ct. 770 [33 L.Ed. 157]; Central Transp. Co. v. Pullman's Palace Car Co., 139 U. S. 24, 48, 11 S.Ct. 478 [35 L.Ed. 55]." (Italics added.)

This doctrine is important here, in connection with the contractual nature of the liability under the South Carolina law and the consequent necessity for knowledge and ratification on the part of the corporate stockholder.

That paragraph of the Circuit Court decree in which it was stated that "stockholders acquiring their stock for cash as distinguished from those stockholders who sold bank stock to the bank and invested the proceeds in Investment Company stock, became none the less the real parties in interest", goes on to say: "If the ownership of the bank stock by the holding company had been declared invalid, it would have resulted, not in the distribution of the stock among the original holders who had sold their rights, but to the persons then owning stock in the holding company," citing O'Keefe v. Pearson, 1 Cir., 73 F.2d 673, 677, 97 A.L.R. 1243. In the O'Keefe Case the court had under consideration liability for assessment on national bank stock of the holder of a certificate of interest in a voting trust of national bank shares, attaching liability, stating that, if the voting trust were declared invalid, its holdings, consisting entirely of the bank stock deposited with it under the agreement, would necessarily be distributed in kind among the holders of the voting trust certificates. This case cannot, I think, support the conclusion of the Circuit Court that if the holding by Investment Company of stock in Peoples State Bank had been declared invalid (before the failure of the bank?), it would have resulted in distribution of bank stock to the then stockholders of Investment Company. As to the defendants here, such action would have met the bar of Keyser v. Hitz. These defend-

ants, without knowledge of the Investment Company's investment in bank stock, if they are to be believed—their testimony is uncontroverted, and this court has no reason to question its verity—would have had the alternative of refusing or accepting— of confirming or of repudiating, an action which only if ratified would place upon them a *contractual* liability to the depositors which the plaintiff receiver could enforce.

Concerning the questions submitted, the Circuit Court opinion held that the defendant stockholders of Investment Company then before the court were the true beneficial owners of the bank stock standing in the name of Investment Company, imputing to such stockholders as were not concerned with the operation of the bank or of Investment Company knowledge of its intent and purpose, in the absence of any evidence offered by them to the contrary. In this phase of the proceeding, the court must pass upon the asserted liability of stockholders of Investment Company, who not only deny knowledge of the initial purpose of the use and of the holding by Investment Company of bank stock at any time, but who make a positive showing that not only was the ultra vires and illegal action of the corporation unknown to them at any time, but that, prior to making the investment, they made every inquiry and investigation that a prudent man could have made as to the nature and purpose and intended use of Investment Company, in order to satisfy themselves that the question now presented would not arise. Had they, in the abundance of caution, asked to see the charter issued to Investment Company by the state of South Carolina, they would have been satisfied that it was chartered as a general investment corporation. It does not appear that they were aware, or that the officers of the corporation and its management were aware of the South Carolina prohibitory statute as to investment in banking, directly or indirectly, by South Carolina corporations, but *charged with a knowledge of the law,* these defendants had a right to rely upon the operation of Investment Company under the terms of its charter, and upon the protection afforded *them* by the prohibiting statute as to unlawful investment. See Scott v. DeWeese, 181 U. S. 202, 21 S.Ct. 585, 45 L.Ed. 822, citing with approval California Nat. Bank v. Kennedy, 167 U.S. 362, 363, 17 S.Ct. 831, 42 L.Ed. 198. In Concord First Natl.

Bank v. Hawkins, 174 U.S. 364, 19 S.Ct. 739, 43 L.Ed. 1007, where after concluding that under the national banking statute, an association organized thereunder could not invest in other national bank stocks, the court says (page 372, 19 S.Ct. page 742):

"No intention can be reasonably imputed to congress to subject the stockholders and creditors thereof, for whose protection those limitations and provisions were designed, to the same liability by reason of a void act on the part of the officers of the bank as would have resulted from a lawful act."

It follows that no such intention can be reasonably imputed to the General Assembly of South Carolina in the enactment of section 7677, par. 5, Civil Code of South Carolina 1932. In White v. Bank, supra, where it was held that the liability would not attach to the corporation because of the ultra vires and illegal investment, the question of liability of the corporate stockholders was not involved. So in Alderman v. Alderman, supra, where the effort to attach liability to the trustees who made the illegal investment in bank stock was denied on the ground that the investment was ultra vires and void, and could not be ratified, there was no consideration of the possible liability of the beneficiaries, and it is a reasonable conclusion that, under the court's view as there expressed, no liability would have been attached to the beneficiaries. In Nettles v. Sottile, supra, as hereinbefore referred to, the corporate stockholders were held liable as participators in a fraudulent effort by one of the stockholders to divest himself of pending liability. And this court is of the opinion that the only binding authority in Nettles v. Rhett, supra, is as to the liability there asserted against Investment Company stockholders then before the court, who, because of participation in the initially developed illegal purpose of the corporation, in its use and management for the illegal purpose of holding bank stock, or because of transactions with the bank preceding their investment involving the transfer of stock in other banks, or because of the failure to sustain by proof the allegations of answers filed setting up lack of knowledge of the illegal investment. As to the defendants now before the court, I must conclude as an established fact that they had no knowledge at any time prior to the closing of the bank of the illegal use of Investment Company's assets. The fact of their acceptance of the dividends from Investment Company on their preferred stock, which, it is shown, could only have been derived by Investment Company from the holdings of stock in Peoples State Bank, of which they had no knowledge, could not, in my opinion, justify the conclusion that they were the true and beneficial owners of a proportionate share of the bank stock, in the face of the total failure of any facts which would justify the conclusion that they bore to the depositors of Peoples State Bank any contractual relation.

Holding these views so strongly, I am emboldened to suggest that the language of the opinion in 94 F.2d 42, cited supra, was intended to be binding only when the facts justified its application, as in the case then under consideration. Approval of the doctrine of Keyser v. Hitz, supra, that the transfer of bank stock to a person without his knowledge does not of itself impose upon him the liability attached by law to the position of a stockholder, followed by the statement that "it is conceivable that this ruling may be extended to one who purchases shares in a general investment corporation unaware that it holds bank stocks", modifies, I think, the conclusiveness of the further statement that "no such contention of innocence [is] tenable in the pending case where the holding company was designed primarily to hold bank stocks during the organization of a merger, and in fact held only stock of the merged bank at the time that the liability attached."

The juxtaposition of the approval of a doctrine so clearly indicating the freedom from liability of defendants here, with an indicated denial of their right to avail themselves of it, should, as to its finality, be construed most favorably to these defendants. There is no degree of innocence. A corporate stockholder in a corporation chartered by the state to do a general investment business, unaware of the unlawful intent of the organizers of the corporation, and with no subsequent knowledge of illegal investment, is in no different position, so far as the reason for freedom from liability is concerned, from the holder of stock in a general investment company already organized and doing business, holding bank stock without his knowledge. And, as I see it, there is no equitable or legal ground for attaching liability to the

holder of stock in a corporation formed for an illegal purpose of which he had no knowledge. He is entitled to the protection afforded by the prohibitory statute in the warranted reliance of stockholders upon the lawful conduct of the corporate business. It is not sufficient to deny this immunity to the stockholder on the ground that otherwise the purpose of the added liability statute for the protection of stockholders would be destroyed. In so many of the bank stock liability cases the courts apparently have stressed a fictitious sanctity to the penalty statute. Depositors, they say, even in the absence of any showing of investigation of the bank's stock-book stubs or of knowledge otherwise gained as to the personnel and responsibility of holders of stock in the bank with which they are dealing, are entitled to rely on what the stock-book shows in that regard in the event of bank failure. It would appear then that, whether informed or not, depositors in Peoples State Bank to the extent of some twenty million dollars were charged with knowledge of the extensive holding of Peoples State Bank stock by Investment Company, and other corporations as against whom no added liability could be recovered.

Again, if the defendants now before the court may conceivably have been free of liability, being without knowledge, having neither approved of nor acquiesced in a partial unlawful investment of the corporate assets in bank stock, at what stage of the unlawful, unknown and unapproved illegal course, amounting finally to illegal investment of the total assets of the corporation, would the liability attach? And on what theory could it be held that they are estopped from pleading or asserting their ignorance and lack of participation as to any part of the unlawful investment?

The issue here is free from the complications presented in the prior phase of this proceeding. Clear-cut, it is whether a person or an association of persons may, by the unlawful use of money entrusted to him or them for a lawful purpose, bind the subscriber to a penalty liability beyond the scope and intent of his purpose or undertaking, and thus make him a party to a contract which he never contemplated. Under all the authorities, including the careful and respectful construction I have been constrained to give, in its proper application here, to the Fourth Circuit's opinion in Nettles v. Rhett, supra, my judicial

conclusion is that defendants here are not in any sense responsible for the unlawful acts of Investment Company which plaintiff relies upon as attaching to them proportionate liability on their holdings of Investment Company stock to the assessment levied on stock of Peoples State Bank held in the name of Investment Company.

Judgment will be entered for the defendants.